OPINION OF THE COURT
Alexander, J.
On this appeal from an order of the Appellate Division, *553 reversing defendant’s conviction, after jury trial, of robbery in the second degree and ordering a new trial because the prosecutor purposefully excluded blacks from the petit jury in violation of the Equal Protection Clause of the Fourteenth Amendment (Batson v Kentucky, 476 US 79), the People argue that no pattern of discriminatory use of peremptory challenges was shown and that because the number of blacks remaining on the jury, despite the exercise of their peremptory challenges, reflected the percentage of blacks in the community, any presumption of discriminatory use of peremptory challenges was overcome. Alternatively, the People urge that by ordering a new trial instead of remanding for a hearing, the Appellate Division improperly deprived them of an opportunity to offer nonpretextual, race-neutral reasons for the suspect peremptory challenges.
We conclude that defendant demonstrated a prima facie case of discrimination in the People’s use of their peremptory challenges, but because we agree that the Appellate Division’s remedial action was improper, we modify by remitting to that court for further proceedings in accordance with this opinion.
I
Defendant and codefendant Ronald Johnson, both of whom are black, were indicted for various crimes arising out of an armed robbery of a supermarket in Bronx County and a subsequent exchange of gunfire with pursuing police officers. The indictment charged them with two counts of attempted murder of a police officer, robbery in the first and second degrees, and criminal possession of a weapon.
During the voir dire at the ensuing trial, a total of 10 black and 37 white and Latino surname prospective jurors were examined during nine rounds of questioning. The prosecutor exercised 10 peremptory challenges, 7 of which were used to remove 7 of the 10 blacks on the panel while only 3 were used against the 37 white and Latino surname members of the panel.
The Appellate Division concluded from its examination of the record that the seven blacks challenged by the prosecution were a heterogeneous group of both sexes from different occupations and social backgrounds. Four of them were identifiable: one of the males was a psychiatric aide married to a *554 former nurse; another male was a Con Edison employee; a third male was a computer programmer who had served on a Grand Jury and the female was an unemployed factory supervisor whose husband and child were employed by a food company. The record did not specifically identify which three of the remaining six venirepersons peremptorily challenged by the prosecution were black. However, of the three blacks on the panel not peremptorily challenged by the prosecutor, two had associations with law enforcement: one was a part-time security guard at Shea Stadium and Madison Square Garden whose duties included restraining alleged wrongdoers and turning them over to the police; the other had a brother in law enforcement and had served on a Grand Jury for a "number of years.” Defense counsel challenged these two prospective jurors and the one remaining black was seated on the final jury along with 11 whites.
In support of a timely mistrial motion, defense counsel pointed out for the record that both defendant and his counsel, as well as the codefendant were black, and that the population of Bronx County was at least 50% black.* Defense counsel also argued that the prosecutor was aware that a prudent defense attorney would exercise peremptory challenges against two of the black venirepersons not removed by the prosecution since one was associated with law enforcement and the other a "professional grand juror.” This, he argued, was consistent with the prosecutor’s strategy to allow a token number of blacks to remain on the panel unchallenged in order to avoid a charge of systematic exclusion.
During the colloquy following a defense objection to the peremptory strikes, the prosecutor volunteered that "if [counsel] would like me to go [in]to the qualifications of each of the other jurors, I would go through them at this time.” The trial court denied the mistrial motion, concluded that there had not been any systematic exclusion and declined the prosecutor’s ofier to explain her challenges. The jury subsequently convicted defendant of second degree robbery. On appeal, a divided Appellate Division reversed the conviction and ordered a new trial, concluding that a "pattern of strikes *555 against black[s]” (145 AD2d, at 233), evincing a discriminatory use of peremptory challenges had been established. Leave to appeal to this court was granted to the People by a dissenting Justice of the Appellate Division.
The People argue that inasmuch as the prosecutor did not exclude all blacks from the jury defendant failed to establish a prima facie showing of discrimination under Batson v Kentucky (476 US 79, supra). They further argue that since three blacks were left unchallenged by the prosecutor, the defendant had a jury containing a percentage of blacks (25%) closely reflecting the percentage of the black population of The Bronx at the time of trial (30%). Based on these percentages they argue that defendant cannot establish a "real claim of discrimination” because he was not prevented by the actions of the prosecutor from having a jury whose racial makeup was roughly representative of his own race in the community. Additionally, they contend that in concluding that there had been a Batson violation, the Appellate Division considered as a "relevant circumstance”, improperly ascribed to the People, the defendant’s exercise of two peremptory challenges against black venirepersons. Finally, the People argue that in any event, assuming a prima facie case of racial discrimination in jury selection was established, by ordering a new trial of this 10-year-old case rather than remanding for a hearing, the Appellate Division deprived the People of an opportunity to demonstrate nonpretextual race-neutral reasons for the exercise of their peremptory challenges.
II
That the racially motivated exercise of peremptory challenges by the prosecution violates the Equal Protection Clause of the Fourteenth Amendment, is no longer open to question. (Batson v Kentucky, 476 US 79, supra; Griffith v Kentucky, 479 US 314; People v Scott, 70 NY2d 420; see also, People v Kern, 75 NY2d 638 [decided today].) In order to establish a prima facie case of discrimination based on the prosecution’s use of peremptory challenges to strike members of the defendant’s race from the petit jury, a defendant must show (1) that he or she is a member of a cognizable racial group, (2) that the prosecutor exercised peremptory challenges to remove members of the defendant’s race from the venire, and (3) facts and other relevant circumstances sufficient to raise an inference that the prosecutor used the challenges to exclude people *556 because of their race (Batson v Kentucky, 476 US 79, 96-98, supra; People v Scott, 70 NY2d 420, 423, supra). In tendering a prima facie case of racial discrimination, defendant "may also rely on the proposition that peremptory challenges permit discrimination by those inclined to discriminate” (People v Scott, 70 NY2d 420, 423, supra) and the court may properly consider that a " 'pattern’ of strikes against black jurors included in the particular venire might give rise to an inference of discrimination,” (Batson v Kentucky, 476 US 79, 97, supra.) Once defendant has made a prima facie showing of discrimination, the burden shifts to the prosecution to come forward with nonpretextual race-neutral explanations for challenging the black jurors (id., at 96-97). It is not sufficient for the prosecution to merely allege its good faith or to claim that those jurors stricken likely would be biased because they share the defendant’s race (Batson v Kentucky, 476 US 79, 96-98, supra; see People v Hernandez, 75 NY2d 350).
Turning to the facts of this case, we agree with the Appellate Division majority that a "pattern of strikes” was established prima facie. The prosecutor used only 10 peremptory challenges, 7 of which were used to strike 7 of the 10 blacks on the venire, while only 3 peremptory challenges were used against the 37 nonblacks. Not only were a disproportionate number of blacks excluded, but also the prosecutor’s exclusion of black venirepersons who as the Appellate Division concluded were "a heterogeneous group of both sexes with different occupations and social backgrounds” (145 AD2d, at 232) and did not otherwise appear to be unsuited for jury service on this case, raises an inference that the prosecutor impermissibly measured prospective black jurors by an unconstitutional standard: specifically, their race. These circumstances were sufficient to establish a "pattern of strikes” against black prospective jurors based " 'solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State’s case against a black defendant’ ” (People v Scott, 70 NY2d 420, 425, quoting Batson v Kentucky, 476 US, at 89, supra).
Moreover, it cannot be said, on this record, that the Appellate Division erred as a matter of law in considering as a "relevant circumstance,” in determining whether or not a pattern of discriminatory strikes had been shown, the fact that the People did not exercise peremptory challenges against the two black prospective jurors who had relationships with law enforcement. It was not unreasonable to assume that *557 in a case involving crimes against police officers defense counsel would be particularly intent on excluding from the jury panel persons who had any connection with law enforcement. Thus, in these circumstances, the inference that the prosecution used its peremptory challenges discriminatorily is not diminished by the prosecutor’s failure to challenge these two prospective jurors.
The People argue however, that absent the peremptory strikes of two blacks by the defense, the jury would have been composed of a percentage of blacks commensurate to the percentage of blacks in the community of Bronx County. Thus, according to the People, because they did not strike all blacks from the panel, no discriminatory use of peremptory challenges was demonstrated. We reject these arguments.
A defendant is entitled to a jury composed of " 'neighbors, fellows, associates, [and] persons having the same legal status in society as that which he holds.’ ” (Batson v Kentucky, 476 US 79, 86, supra, quoting Strauder v West Virginia, 100 US 303, 308.) A Batson violation is not avoided, however, simply because notwithstanding the discriminatory use of peremptory strikes, the prosecutor leaves some blacks on the jury panel and those left are enough to form a petit jury containing a percentage of blacks not significantly lower than the percentage of blacks in the local community.
This is so for two reasons. First, Batson’s interdiction of the discriminatory use of peremptory challenges safeguards the right to equal protection not only of a defendant but of citizens who are called for jury duty as well. The exercise of peremptory challenges against prospective jurors solely because of race discriminates unconstitutionally against the excluded juror (Batson v Kentucky, 476 US, at 87-88; People v Kern, 75 NY2d 638, supra [decided today]). Jury duty is an important privilege and obligation of citizenship that should not be denied to some citizens simply because of their race. As we have only today noted in People v Kern (supra) the Batson court recognized that it was both the defendant and the excluded juror who were denied equal protection (Batson v Kentucky, 476 US, at 87-88, supra; see also, Strauder v West Virginia, 100 US, at 308, supra). The Supreme Court’s decision to prohibit racial discrimination in the exercise of prosecution peremptories was also premised upon the injury to the criminal justice system inherent in such discrimination: "The harm from discriminatory jury selection extends beyond that in *558 flicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is ’a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others’ ” (Batson v Kentucky, 476 US, at 87-88, supra [citations omitted]).
Surely, jurors dismissed because of their race will leave the courtroom with a lasting impression of exclusion from jury participation and perhaps of isolation from mainstream society generally (see, Holland v Illinois, 493 US —, 110 S Ct 803, 811-812 [Kennedy, J., concurring]). No argument based on percentages of the population would remove from these excluded prospective jurors the sense of exclusion resulting from being assumed to be incompetent to sit on a jury solely because of their race. Further, this type of discrimination undermines public confidence in the fairness of our system of justice (Batson v Kentucky, 476 US, at 87, supra) and is repugnant to the just operation of a free society. Thus the fact that all black jurors were not removed by the prosecution’s discriminatory use of peremptory challenges does not render the use against some any less a violation of Batson.
Second, any consideration of the percentage of blacks remaining on the petit jury compared to the percentage of blacks in the community of The Bronx is irrelevant to an equal protection analysis under the Fourteenth Amendment (Holland v Illinois, 493 US —, 110 S Ct 803, supra). Contrary to the assertions of the People and the dissenting Justice at the Appellate Division such considerations more aptly pertain to those guarantees of the Sixth Amendment relating to the composition of the venire. Defendant raises no such claim here. Nevertheless the People attempt to invert the Sixth Amendment concept of a “representative venire” drawn from a fair cross section of the community to impose it upon the petit jury selection in support of the conclusion that since blacks remaining on the jury following completion of the exercise of peremptory challenges by the People were fairly representative of the blacks in The Bronx community there had not been any violation of the Fourteenth Amendment’s equal protection guarantee against the discriminatory use of peremptory challenges.
*559 This argument is fatally flawed. Concepts of "representative venire” and "fair cross-section” of the community cannot legitimize a prosecutor’s discriminatory exercise of peremptory challenges in violation of the Equal Protection Clause. For the purposes of equal protection, the constitutional violation is the exclusion of any blacks solely because of their race. If any blacks are so excluded, it is of no moment that the jury nevertheless contains a token number of blacks.
Ill
Notwithstanding our agreement with the Appellate Division that the defendant sufficiently demonstrated prima facie a discriminatory use of peremptory challenges by the People, we note that unlike the prosecution in People v Scott (70 NY2d 420, supra), here the People apparently were prepared to offer nonpretextual race-neutral explanations for the exercise of their peremptory challenges which may have successfully rebutted defendant’s prima facie showing. The trial court summarily rejected this offer, however, based upon its conclusion, in reliance upon Swain v Alabama (380 US 202), that there had not been any "systematic exclusion” of black jurors. Batson of course, overruled Swain in part and established new criteria and procedures for determining whether peremptory challenges were being impermissibly used for discriminatory purposes.
The Appellate Division declined to remit for a hearing in order to provide the People an opportunity to explain their pattern of strikes against black prospective jurors, reasoning that a hearing would be inappropriate because of the lapse of nine years since the trial and "the improbability of reconstructing the voir dire”. (145 AD2d, at 233.) Consequently, the court vacated the conviction and ordered a new trial. The People contend however, that they should be afforded an opportunity to demonstrate nonpretextual race-neutral explanations for their peremptory challenges against black jurors pointing out that the trial court rejected their offer of reasons at the time of the voir dire.
While we acknowledge the difficulty the lapse of time may well present, we nevertheless conclude that the People should be afforded the opportunity requested. In other contexts we have held that the. "People are * * * entitled to a hearing when a court makes an error of law which functionally deprives the People of their one opportunity to put in *560 their case” (People v Giles, 73 NY2d 666, 671; see also, cases cited therein). Here, as in Giles, it was the "ruling by the hearing court” applying the then-valid pr e-Batson law and "not a failure of proof by the People” that resulted in the lack of race-neutral reasons in the record to explain the exercise of their peremptory strikes against blacks (id.). Indeed the record is clear that the prosecutor offered to give such explanations, but that offer was rejected by the court. The rationale of fairness has guided us in according such an opportunity to the People in the past (People v Giles, 73 NY2d 666, 671, supra) and is no less applicable here.
Because the Appellate Division’s decision was made on the law and it does not appear that the court exercised its factual review powers, the case should be remitted to the Appellate Division for determination of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]). If on such review, the Appellate Division determines that the judgment of conviction should be affirmed, it should remit to Supreme Court for a hearing to afford the People an opportunity to establish nonpretextual race-neutral explanations for the exercise of their peremptory challenges. If such legitimate explanations are not satisfactorily established, the judgment of conviction should be vacated and a new trial ordered. Should it be determined that the prima facie demonstration of racially motivated exercise of peremptory challenges is satisfactorily rebutted, the judgment of conviction should be amended to show that result.
Accordingly, the order of the Appellate Division should be modified, and the case remitted to that court for further proceedings in accordance herewith.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order modified and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 The People point out, as did the dissenting Justice at the Appellate Division, that this percentage figure is a gross exaggeration. The Appellate Division noted that according to the 1980 census report of the Bureau of the Census of the U. S. Department of Commerce, blacks constituted 29.8% of the total Bronx population while Latinos constituted 33.9%, 2% of whom identified themselves as Latino-black.