808 P.2d 40

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Louis M. GONZALES,
Defendant-Appellant.**

**No. 11782.**

Court of Appeals of New Mexico.

Jan. 10, 1991.

Certiorari Denied Feb. 14, 1991.

Hal Stratton, Atty. Gen., Katherine Zinn, Ass't Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Peter Rames, Ass't Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals from his convictions for trafficking cocaine and conspiracy to traffic cocaine. The docketing statement listed eighteen issues. The calendar notice that assigned the case to the general calendar held in abeyance defendant's motion to reorder the issues pending submission of this case to a panel. We now grant the motion.

The significant appellate issue raised herein concerns the prosecution's use of its peremptory challenges. We summarily discuss one other issue raised by defendant. We remand this case to the trial court for a hearing on the issues of whether the prosecution used its peremptory challenges to systematically exclude jurors on the basis of their race in violation of the equal protection clause of the fourteenth amendment to the United States Constitution, *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *see also State v. Aragon*, 109 N.M. 197, 784 P.2d 16 (1989), or on the basis of their gender in violation of article II, sections 14 and 18 of the New Mexico Constitution. *See State v. Aragon.*

Defendant explicitly abandoned four issues in his brief-in-chief. These were issues B, I, J, and O in the docketing statement. In addition, we hold defendant has abandoned issues C, E, F, G, H, K, and P and any other issues not explicitly ruled on in this opinion, because defendant has failed to properly brief the issues. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985) (issues raised in the docketing statement and not briefed on appeal are deemed abandoned).

## FACTS

Defendant and a codefendant, Victor Cordova, were tried jointly. Jury selection in this case took two days. On the first day, thirty-seven potential jurors were called. The trial court allowed each defendant four peremptory challenges and the state five. On this first day of jury selection, each defendant exercised all of his peremptory challenges, and the state exercised three of its five available challenges. All three of those challenges were used to remove Hispanic men from the jury. Ten of the necessary twelve jurors were selected from this venire.

The next day an additional twenty-four jurors were called. The trial court again allowed each defendant four peremptory challenges and the state five. The peremptory challenges allowed on the second day could only be used on the group of jurors that had been called for that day. On this second day, the state and each of the defendants exercised all of their peremptory challenges. All five of the state's peremptory challenges were used to remove Hispanic men from the jury.

The composition of the jury that was selected by this process was as follows. Ethnically, the jury consisted of four Hispanics, one Native American, and seven Anglos. In terms of gender, the jury was composed of eleven women and one man. Defendants moved to dismiss the charges against them or, in the alternative, to dismiss the jury and begin jury selection anew, contending that they were denied their rights to equal protection of the law because the prosecution had used its peremptory challenges to systematically exclude Hispanics, and particularly Hispanic men, from the jury. *See Batson v. Kentucky; State v. Sandoval*, 105 N.M. 696, 736 P.2d 501 (Ct.App.1987). The trial court denied the motion.

Defendants then moved to dismiss the charges or, in the alternative, to dismiss the jury and begin jury selection anew, on the grounds that the prosecution had used its peremptory challenges to systematically exclude men from the jury, violating defendants' right to be tried by a jury that was representative of the community. The trial court denied that motion as well, commenting that there was no case law to support the motion.

On appeal, defendant Gonzales argues that he made a prima facie showing that the prosecution's use of its peremptory challenges constituted purposeful discrimination against Hispanics, in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Defendant also argues that the state improperly used its peremptory challenges on the basis of gender, in violation of article II, sections 14 and 18 of the New Mexico Constitution. The state, on the other hand, argues that the trial court properly determined that defendant had not made a prima facie case.

## ISSUES NOT BRIEFED

■ We address first a preliminary issue concerning defendant's brief-in-chief. In several cases, this court has previously decided that, when a case is assigned to a non-summary calendar, the calendar notices previously issued are superceded by the assignment to a non-summary calendar, so that all issues properly raised in the docketing statement are revived and may be briefed regardless of whether they appeared to be abandoned by failure to argue them in the memorandum in opposition. Because our decisions in those cases have been made in the context of motions upon which we do not ordinarily write opinions or because (in one case) the supreme court has decided to order our opinion not published, we take this opportunity to explain the rationale of those decisions.

■ There are sound reasons for allowing a party to brief issues on a non-summary calendar that may have been deemed abandoned, *see State v. Martinez*, 97 N.M. 585, 642 P.2d 188 (Ct.App.1982), during the time an appeal was being considered under our summary calendar. In responding to a summary calendar notice, a party need only convince this court that its proposed disposition is incorrect. Because calendar notices may be issued for tactical reasons, *State v. Gonzales*, 110 N.M. 218, 794 P.2d 361 (Ct.App.1990), this does not always ne-

cessitate responding to every issue. Additionally, there may be instances in which reversal is proposed as a disposition though affirmance may be proposed on other issues. A party may be willing to accept an affirmance on those issues contingent on a reversal of the case. If the same appeal is eventually reassigned to a non-summary calendar, the contingency on which the party relied no longer exists. Thus, in cases reassigned from the summary to a non-summary calendar, all issues properly raised during the summary process are revived and may be briefed.

■ By the same token, once a case is assigned to a non-summary calendar, the parties are expected to comply fully with the appellate rules with respect to briefs. *See* SCRA 1986, 12–213 (Cum.Supp.1990). This means that the brief-in-chief must contain all of the following with respect to each issue. First, it must set out all the facts and proceedings pertinent to a consideration of the issue, including the facts that support the trial court's ruling as well as the facts on which appellant relies for reversal. The facts must be supported by appropriate references to the record proper and transcript of proceedings. *Id.* If some of the facts relied on are not of record below, such as when defendant insists on raising issues pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), the brief should so indicate. *Cf. State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App. 1985) (counsel should inform the court whether the contentions or facts would appear in the record). Second, the brief-in-chief should affirmatively indicate how each issue was raised and preserved below or, if it was not, why this court should consider the issue for the first time on appeal. Third, the brief-in-chief should clearly indicate the authorities and arguments on which appellant relies. *Id.* It should not be necessary for opposing counsel or this court to review documents previously filed in the case in order to understand defendant's issues and arguments. *State v. Aragon*, 109 N.M. 632, 788 P.2d 932 (Ct.App.1990). In addition, the brief should indicate any contrary authorities known to defendant. SCRA 1986, 16–

303(A)(3). Fourth, the brief-in-chief should clearly state the relief sought on appeal. R. 12–213(A)(4); *cf. State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982) (counsel has the duty to preserve a question for appellate review by affirmatively showing in the record that a ruling or decision by the trial court was fairly invoked on the point).

■ With respect to the issues referenced above, the brief-in-chief in this case fails to fully set out the facts, arguments, and authorities relied on for the issues; instead, it responds to the reasoning in a previously issued summary calendar notice. Thus, the brief-in-chief implicitly incorporates by reference the facts, arguments, and authorities set out in the docketing statements and previous memoranda. We have previously held that issues that are argued by reference to the docketing statement will be deemed abandoned. *State v. Aragon.* We do so again.

## PROPRIETY OF STATE'S PEREMPTORY CHALLENGES AGAINST HISPANICS

We note at the outset that it is difficult to determine from the record whether the trial court ruled that defendant had made the prima facie showing required by *Batson* and *Sandoval*. *See State v. Moore*, 109 N.M. 119, 782 P.2d 91 (Ct.App.1989) (discussing the importance of the trial court's role in these cases). From the transcript of the hearing, it appears that the trial court mistakenly believed that in order to establish a prima facie showing defendant was required to prove that Hispanics were substantially underrepresented on the jury. Thus, the only finding made by the trial court was the finding that Hispanics were not substantially underrepresented on the jury. For the reasons discussed below, we hold that this issue was not dispositive. We further hold that, on the facts of this case, defendant made a prima facie showing, and the burden of production shifted to the prosecution to articulate reasons, not related to race, for the challenges. Thus, we remand this case to the trial court to hold a hearing at which the prosecution may explain the reasons for the challenges.

Once the prosecution explains the reasons for the challenges, the trial court is to evaluate the explanation and all the other facts and circumstances of the case, and to find as fact whether the state used its peremptory challenges to eliminate prospective jurors on the basis of race. *See State v. Moore.*

■■■ We recognize that, under *Batson,* a showing by defendant that his racial group is substantially underrepresented on or completely excluded from the jury is one of the ways that defendant can establish a prima facie case. 476 U.S. at 93, 95, 106 S.Ct. at 1721, 1723. However, *Batson* does not require that defendant make such a showing in order to establish a prima facie case of purposeful discrimination. On the contrary, *Batson* recognizes that a prima facie showing may also be established by showing a pattern of strikes against jurors of defendant's racial group. 476 U.S. at 97, 106 S.Ct. at 1723. As this court held in *State v. Lara,* 110 N.M. 507, 797 P.2d 296 (Ct.App.1990), it is not essential that all of the members of the cognizable group be removed from the jury in order to establish a prima facie case of purposeful discrimination. The defendant must, however, show the state's actions established a racially motivated pattern in its strikes. *Id.* Moreover, *Batson* specifically indicates that its examples of how defendant may make a prima facie showing are not the only ways to do so. *Batson.* The fact that the jury appears to be roughly representative of the racial composition of the area is not, by itself, dispositive of the issue of whether defendant made a prima facie case. *See People v. Jenkins,* 75 N.Y.2d 550, 554 N.E.2d 47, 555 N.Y.S.2d 10 (1990). This is so for two reasons.

■■■ First, a careful reading of *Batson* indicates that it is not limited to the rights of criminal defendants. In our view, *Batson* holds that the state's intentional exclusion of persons from sitting on a jury on the basis of the prospective juror's race violates the prospective juror's rights to the equal protection of the laws. 476 U.S. at 87, 106 S.Ct. at 1718; *see also State v. Moore,* 109 N.M. at 125, 782 P.2d at 97

(Ct.App.1989). Such actions undermine public confidence in the system.

■■■ Second, we believe the trial judge's emphasis on the representative character of the jury confuses the concepts of equal protection guaranteed by the fourteenth amendment, *see Batson v. Kentucky,* and the impartial jury guaranteed by article II, section 14 of the New Mexico Constitution. *See State v. Aragon.* Defendant's claim in this case is an equal protection claim. A single prospective juror may be stricken for a racially motivated reason and the jury still retain its "representative" character. This, nevertheless, offends equal protection. As the United States Supreme Court said in *Batson,* " '[a] single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' " *Batson v. Kentucky,* 476 U.S. at 95, 106 S.Ct. at 1722 (1986) (quoting *Arlington Heights v. Metropolitan Housing Dep't. Corp.,* 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977)). *See, e.g., United States v. Battle,* 836 F.2d 1084 (8th Cir.1987) (striking a single black juror for racial reasons violates equal protection even though other black jurors are seated, and even though there are valid reasons for striking other black jurors); *United States v. David,* 803 F.2d 1567 (11th Cir.1986); *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (Ct.App.1988) (issue is whether state exercised *any* of its peremptory challenges for discriminatory reasons).

For both these reasons, we hold that the fact that defendant's racial group is not substantially underrepresented on the jury is not dispositive of the issue of whether defendant has been able to make a prima facie showing of purposeful discrimination under *Batson.* The focus of the inquiry conducted by trial courts under *Batson* should be on determining whether the prosecution used *any* of its peremptory challenges to eliminate a prospective juror from hearing the case on the basis of that prospective juror's race or assumptions based primarily on the prospective juror's race. *See, e.g., State v. Moore. Moore*

indicates that where the record shows that the trial court did not clearly indicate whether or not defendant made a prima facie case, thus shifting the burden of production to the prosecution, remand is the appropriate remedy. *Accord Ex Parte Branch,* 526 So.2d 609 (Ala.1987).

A prima facie showing means such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972); *Kerman v. Swafford,* 101 N.M. 241, 680 P.2d 622 (Ct.App.1984); *see also State v. Matamoros,* 89 N.M. 125, 547 P.2d 1167 (Ct.App.1976). In order to make a prima facie showing under *Batson,* a defendant must show that:

> (1) he is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; (3) these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members of the panel solely on account of their race.

*State v. Goode,* 107 N.M. 298, 301, 756 P.2d 578, 581 (Ct.App.1988). A showing that the first two criteria are met is not, by itself, sufficient to establish a prima facie case; the third criterion must also be met. *State v. Jim,* 107 N.M. 779, 765 P.2d 195 (Ct.App. 1988).

There are a number of ways that this third criterion can be met. The important inquiry is whether defendant can point to some facts or circumstances from which a trial court could reasonably infer that the prosecution has intentionally used its peremptory challenges to eliminate jurors on the basis of their race, rather than for racially neutral reasons related to the juror's ability to fairly and impartially hear the case. Thus, the third criterion is met when defendant shows that his racial group is substantially underrepresented or eliminated from the jury entirely. *Id.* It is met when defendant shows that the case is one that is particularly susceptible to discrimination and that members of his ethnic group have been stricken by the state's use

of its peremptory challenges. *Id.* It is also met when defendant shows that jurors who are of the same race as defendant have been eliminated for reasons that are not applied to jurors of another race. *See State v. Moore.* In addition, at least one court has determined that a showing that the state used eighty percent of its peremptory challenges to strike members of defendant's racial group from the jury constitutes a prima facie showing that requires the state to articulate neutral reasons for the challenge. *See Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (Ct.App.1988).

In this case, defendant met the first two criteria by showing that he is Hispanic and that the state exercised peremptory challenges to remove Hispanics from the jury panel. Defendant argues that he also met the third criterion because this was a case that was particularly susceptible to racial discrimination because the defendants were Hispanic and the state's key witness against them was Anglo. *See State v. Jim.* While this is true, we note that other police officers and state's witnesses were also Hispanic. Thus, we do not believe that defendant has shown that this case is one that is particularly susceptible to racial discrimination.

Next, defendant argues that the fact that the state exercised all of its peremptory challenges to strike Hispanics from the jury establishes, as a matter of law, that the defendant has made a prima facie case. *See Batson v. Kentucky* (defendant can make a prima facie showing by showing a pattern of strikes against members of his racial group). The state argues that the fact that the jury contains some Hispanics and the fact that the state did not use all its available peremptory challenges are also relevant to determining whether defendant has made a prima facie showing of purposeful discrimination. *See United States v. Montgomery,* 819 F.2d 847 (8th Cir.1987); *United States v. Dennis,* 804 F.2d 1208 (11th Cir.1986).

We agree with defendant that a showing that the state used eighty percent of its peremptory challenges to eliminate members of his racial group from the jury was

a prima facie showing of intentional discrimination, and shifted the burden to the prosecution to come forward with a racially neutral explanation to explain the discriminatory pattern of challenges. *See Stanley v. State.* Moreover, we disagree with the state's theory. We do not believe that the fact that some Hispanic jurors were not stricken, or the fact that the state did not use all of its peremptory challenges is determinative as to whether defendant has made a prima facie showing. *See State v. Goode* (prosecution's justifications are not considered in determining whether a prima facie case was made). Both these facts, however, may be taken into account by the trial court in determining whether, considering all the facts and circumstances, defendant has persuaded the trial court that the prosecution used its peremptory challenges to discriminate intentionally against members of his racial group. Thus, we hold that defendant established a prima facie case of intentional racial discrimination in the use of peremptory challenges.

■ Once the trial court determines defendant has made a prima facie showing, the burden shifts to the prosecution to produce a racially neutral, specific reason for the challenge. *State v. Moore.* After the state produces a reason for the exercise of the challenge, it is for the trial court to consider the reason advanced and to determine whether, considering all the facts and circumstances, defendant has carried his burden of persuading the trial court that the state used one or more of its peremptory challenges to eliminate jurors on the basis of race. *Id.* The trial court's determination that the prosecution has or has not intentionally discriminated on the basis of race is a finding of fact and will not be disturbed on appeal if it is supported by substantial evidence. *See Batson v. Kentucky; State v. Goode; State v. Moore.* The finding of facts is a province of the trial courts, not the appellate courts. *State v. Moore.*

In this case, the trial court incorrectly indicated that defendant failed to make a prima facie showing of intentional discrimination. Under these facts, the state may not have been aware of the full import of the issue and may not have placed all its reasons in the record.

Accordingly, we remand this case to the trial court with instructions to hold a hearing on this issue. At the hearing, the prosecution shall be required to produce an explanation for the exercise of each of its eight peremptory challenges. The trial court shall then evaluate the explanation and all the other facts and circumstances of the matter and shall make a finding on the issue of whether the prosecution intentionally used any of its peremptory challenges to strike prospective jurors on the basis of their race or on the basis of assumptions based on their race. If the trial court, on remand, finds that the state has failed to meet its burden of coming forward and establishing racially neutral explanations for its use of each of its peremptory challenges, defendant's conviction shall be set aside and a new trial ordered. If not, the conviction will stand. *See State v. Moore.*

## USE OF PEREMPTORY CHALLENGES ON THE BASIS OF GENDER

■ The question of whether the state may exercise its peremptory challenges to strike prospective jurors from the jury panel based upon gender is a matter of first impression in New Mexico. Other jurisdictions which have considered this issue are divided in both their results and the grounds for reaching their results. In extending the *Batson* rationale to gender-based peremptory challenges, the Ninth Circuit Court of Appeals stated, "Because gender discrimination during jury selection is not substantially related to the achievement of an important governmental interest, the fifth amendment's equal protection principles compel us to prohibit peremptory challenges on the basis of gender." *United States v. De Gross,* 913 F.2d 1417, 1422 (9th Cir.1990); *People v. Irizarry,* App. Div., 560 N.Y.S.2d 279 (1990).

Several jurisdictions have arrived at an opposite result, determining that the federal constitution does not prohibit the state's use of peremptory challenges to strike jurors from the jury panel based on their

gender. *See United States v. Hamilton,* 850 F.2d 1038 (4th Cir.1988); *Daniels v. State,* — Ala. — (filed September 21, 1990); *People v. Crowder,* 161 Ill.App.3d 1009, 113 Ill.Dec. 798, 515 N.E.2d 783 (1987); *Hannan v. Commonwealth,* 774 S.W.2d 462 (Ky.Ct.App.1989); *State v. Adams,* 533 So.2d 1060 (La.Ct.App.1988); *State v. Clay,* 779 S.W.2d 673 (Mo.App. 1989); *State v. Culver,* 233 Neb. 228, 444 N.W.2d 662 (1989); *State v. Oliviera,* 534 A.2d 867 (R.I.1987). *See also Potts v. State,* 259 Ga. 96, 376 S.E.2d 851 (1989); *Patri v. Percy,* 530 F.Supp. 591 (Wis.1982). It is evident from these cases that there is a split in authority on the issue of whether the equal protection clause of the United States Constitution prohibits use of peremptory challenges based on gender.

This case, however, will be decided on the basis of the New Mexico Constitution rather than the federal constitution. While this case was pending before this court, our supreme court decided *State v. Aragon.* In *Aragon,* our supreme court held that a prosecutor's systematic use of peremptory challenges to eliminate persons from the jury on the basis of the person's race violates article II, section 14 of the New Mexico Constitution. We hold that *Aragon* applies to all cases pending on direct review, provided the issue was raised and preserved below. *See State v. Valenzuela,* 94 N.M. 340, 610 P.2d 744 (1980), *overruled on other grounds, Hernandez v. State,* 96 N.M. 585, 633 P.2d 693 (1981); *State v. Rogers,* 93 N.M. 519, 602 P.2d 616 (1979). In addition, we read *Aragon* as also precluding the systematic use of peremptory challenges to eliminate persons from the jury on the basis of their gender.

■ In *Aragon* our supreme court held that a defendant's right to an impartial jury, guaranteed to him by article II, section 14 of the New Mexico Constitution, prohibits the prosecution from using its peremptory challenges to deprive a defendant of a jury reflecting a fair cross section of the community. We further read *Aragon* to hold that the right to a jury reflecting a fair cross section of the community under the New Mexico Constitution is at least as broad as that guaranteed by the sixth amendment of the federal constitution. Although *Aragon* did not discuss the issue of the state's use of peremptory challenges to strike prospective jurors on the basis of gender, the rationale relied upon by the court therein similarly prohibits discrimination by the prosecution in the exercise of its peremptory challenges for the reasons of gender. It is well settled that the sixth amendment to the United States Constitution prohibits the exclusion of persons from the pool of potential jurors on the basis of gender. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

Moreover, in *Aragon,* our supreme court indicated it was adopting the *Wheeler* doctrine, first articulated in *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978), and since adopted in a number of other states. *See, e.g., Fields v. People,* 732 P.2d 1145 (Colo.1987) (en banc); *Riley v. State,* 496 A.2d 997 (Del.1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986); *People v. Thompson,* 79 A.D.2d 87, 435 N.Y.S.2d 739 (1981); *see also Kibler v. State,* 546 So.2d 710 (Fla.1989).

In *Wheeler,* the California supreme court held that the right to a jury trial, as provided by the California constitution, forbade the exercise of peremptory challenges on the basis of "group bias." The court identified a long-standing judicial animus against group bias. The court cited cases based on equal protection, *e.g., Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940), but relied for the most part on cases dealing with the right to trial by jury, both traditional and constitutional. The court concluded that a test similar to the *Batson* test should be used to detect improper peremptory challenges. The only significant difference in the *Wheeler* test is that the defendant need not show that he is

a member of the group against whom bias is shown, but must show instead that the excluded jurors belonged to a "cognizable group within the meaning of the representative cross-section rule." *Id.,* 22 Cal.3d at 273, 583 P.2d at 764, 148 Cal.Rptr. at 905.

*Wheeler* did not clearly define a cognizable group for purposes of the fair cross section requirement. Instead, it addressed itself to challenges designed to eliminate jurors "merely because they are members of an identifiable group distinguishable on racial, religious, ethnic or similar grounds...." *Id.* at 270, 583 P.2d at 761, 148 Cal.Rptr. at 902. However, other states adopting the *Wheeler* doctrine have determined that the doctrine applies to the use of peremptory challenges to eliminate persons on the basis of gender. *See, e.g., Fields v. People; Commonwealth v. Soares; State v. Gilmore.* Moreover, since *Wheeler* was decided, the California courts have indicated that the doctrine applies to challenges used to eliminate persons on the basis of both race and gender. *People v. Motton,* 39 Cal.3d 596, 217 Cal. Rptr. 416, 704 P.2d 176 (1985) (peremptories used to eliminate black women from the jury).

Finally, we believe our holding is also compelled by our state constitution. Since 1973, discrimination on the basis of sex has been explicitly prohibited by the New Mexico Constitution. N.M. Const. art. II, § 18 ("Equality of rights under law shall not be denied on account of the sex of any person."). Thus, we believe it is clear beyond cavil that discrimination on the basis of gender in the use of peremptory challenges is prohibited in New Mexico. *Cf. Fields v. People* (peremptory challenges used against Hispanics); *Commonwealth v. Soares* (challenges against Blacks); *State v. Gilmore* (challenges against Blacks).

■ We read both article II, sections 14 and 18 of the New Mexico Constitution and the rationale of *Aragon* as precluding the state from using its peremptory challenges to strike jurors because of gender in a criminal case. Having determined that *Aragon* prohibits use of peremptory challenges to eliminate jurors on the basis of

their gender, we turn to the application of *Aragon* to the case at bar. In *Aragon,* our supreme court adopted the analysis of *Fields v. People.* Under this analysis, defendant may show that his opponent has struck most or all of the members of the cognizable group from the venire, or has used a disproportionate number of peremptory challenges to eliminate members of the cognizable group. In this case, the prosecution used each of its eight peremptory challenges to strike a male Hispanic from the jury. In addition, *Aragon* indicates that the defendant may supplement this showing by drawing the trial court's attention to the failure of the prosecution to engage the same jurors in more than desultory voir dire, or indeed to ask them any questions at all. In the instant case, counsel for defendant pointed out to the trial court that one of the eight jurors challenged by the prosecution had said nothing during voir dire, and several others had said very little. Finally, *Aragon* indicates that although a defendant need not be a member of the excluded group in order to complain of a violation of the fair cross section requirement, if he is a member of the excluded group, this also should be drawn to the trial court's attention. Defense counsel noted in this case that both defendants, like the excluded jurors, were Hispanic men.

■ In addition, *Aragon* adopts a variant of the procedure set out in *Batson v. Kentucky* as the procedure to be used in raising and resolving allegations that the prosecution has intentionally used its peremptory challenges to eliminate members of a cognizable group on the basis of their membership in the group. *See also State v. Moore; State v. Sandoval.* We hold the same procedure should be used to raise and resolve allegations of intentional discrimination on the basis of gender. Under these procedures, defendant must make a prima facie showing that the prosecution has used its peremptory challenges to purposefully discriminate against the excluded group. This prima facie showing may be made by showing 1) that the state has exercised its peremptory challenges to re-

move members of a cognizable group from the jury panel, and 2) that these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members of the panel solely on account of their membership in the excluded group. *See State v. Goode.* We emphasize that a prima facie showing must address both these criteria; the mere showing that the state has used its challenges to exclude members of a cognizable group will not, by itself, establish a prima facie showing. *State v. Jim.* There are a number of ways to meet the second criterion. Among other things, defendant may show that the cognizable group is substantially underrepresented on the jury. *Id.*

It is not essential, however, that all of the members of the cognizable group be removed from the jury in order to establish a prima facie case of purposeful discrimination. *See State v. Lara. Lara* held that the defendant failed to establish a prima facie case of discrimination use by the state in the use of its peremptory challenges. Although a showing that the state's challenges have caused the jury to contain no members of the cognizable group may help raise an inference of discrimination, this is not dispositive of the issue. This court found that the defendant in *Lara* failed to show the state's actions established a racially motivated pattern in its strikes.

▇▇ Once a defendant makes a prima facie showing of purposeful discrimination against members of a cognizable group, the burden shifts to the state to articulate a neutral explanation for the challenge that is related to the particular case and gives a clear, concise, reasonably specific, legitimate explanation for excusing the jurors. *State v. Aragon; State v. Goode.* The determination of whether a defendant has made a prima facie showing and the determination of whether the defendant has carried his burden of persuasion on the issue are both factual determinations and are reviewed by this court under the substantial evidence standard. *State v. Moore; State v. Goode.*

In this case, it is clear that the trial court did not believe that the state was prohibit-ed from using its peremptory challenges to discriminate on the basis of gender, and thus denied the motion. Under these circumstances, it is clear that the trial court did not make an informed decision, based on all the facts. Thus, we remand this case to the trial court to reconsider this issue on the merits. *See State v. Moore.*

Therefore, consistent with *State v. Cordova,* which we also decide today, we find that defendant Gonzales successfully made a prima facie showing that the prosecution purposefully exercised peremptory challenges against Hispanic men. We believe that Hispanics and men are cognizable groups for purposes of *Wheeler* and hold that the burden shifted to the prosecution to give its reasons for the peremptory strikes. We remand for a hearing on this issue as well.

Defendant makes an additional argument that the jury panels were invalid because statutory procedures were not followed. However, defendant did not raise this issue in the trial court until the morning of the second day of jury selection. Thus, the issue is waived. *See* NMSA 1978, 38-5-16 (Repl.Pamp.1987).

CONCLUSION

For the reasons given above, we remand this case to the trial court for a hearing on the issues of whether the prosecution used its peremptory challenges to systematically exclude jurors on the basis of their race or gender. *State v. Moore.* If the trial court finds that the prosecution used its peremptory challenges to systematically exclude jurors on the basis of either their race or their gender or both, defendant's convictions are reversed, and defendant shall be granted a new trial. If the trial court finds the prosecution did not use its peremptory challenges in an intentionally discriminatory manner, defendant's convictions are affirmed.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.