Bellacosa, J.
(concurring). We concur in the result and in Judge Simons’ opinion, but write separately to express a broader concern and perspective.
*326 We agree that ”[t]he purpose of the Batson [Batson v Kentucky, 476 US 79] rule is to eliminate discrimination, not minimize it” (majority opn, at 321). The Court’s conclusions are correct — in this case, Bolling, the prosecutor should have been required to give racially neutral reasons to rebut defendant’s prima facie case of discriminatory peremptory strikes, and in Steele the defendant failed to establish a prima facie case. We agree with these results because People v Jenkins (75 NY2d 550) could not be more explicit in its guidance: "For the purposes of equal protection, the constitutional violation is the exclusion of any blacks solely because of their race. If any blacks are so excluded, it is of no moment that the jury nevertheless contains a token number of blacks” (supra, at 559 [emphasis in original]).
The rationale of Bolling, however, along with the eight-year experience in this State with the effectiveness — or lack of same — of the Batson remedy, and the proliferation and permutation of problems in the appellate pipeline, point inexorably to the need for a broader remedy: the elimination of the peremptory challenge process. If the purpose, quoted above, is to be honored and achieved, then the euphemisms and the rationalizations should be ended. Peremptories have outlived their usefulness and, ironically, appear to be disguising discrimination — not minimizing it, and clearly not eliminating it. The time and circumstances warrant the Legislature addressing these important issues.
The process that requires courts to sift through counsel’s words for patterns or pretexts of discrimination has not served the goal of cutting the discriminatory weeds out of the jury selection process. Indeed, "[a]s much as and perhaps more than the decision in Swain [v Alabama, 380 US 202], Batson brings to the surface and appears to ratify crude and unbecoming ways of classifying human beings” and "to disapprove some invidious discrimination while apparently validating much more” (Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts, 56 U Chi L Rev 153, 201 [1989]).
Analytically, peremptories and race-neutral articulations present a quintessential and untenable dualism. A peremptory challenge by its nature should not have to be explained. CPL 270.25 opens with this sentence: "A peremptory challenge is an objection to a prospective juror for which no reason need be assigned.” Batson, of course, necessarily changed that. Yet, *327 the Batson approach has proved unworkable and, in the State judicial laboratories, has rather quickly proved wrong the Batson Court’s confidence that Judges "will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges creates a prima facie case of discrimination” (476 US 79, 97, supra), and — after asserted rationalizations are proffered — "to determine if the defendant has established purposeful discrimination” by the prosecutor, or vice versa (id., at 98 [emphasis added]).
Perversely, many varieties of discrimination, except the most overt, flagrant manifestations, appear to be surviving the scrutiny of the half-step Batson remedy. Time and experience with many cases have proven the prescience of Justice Marshall’s observations, concurring separately in Batson, that "[m]erely allowing defendants the opportunity to challenge the racially discriminatory use of peremptory challenges in individual cases will not end the illegitimate use of the peremptory challenge” because Batson leaves prosecutors "free to discriminate against blacks in jury selection provided that they hold that discrimination to an 'acceptable’ [or nonascertainable] level” (Batson v Kentucky, supra, at 105 [emphasis added]). Recognizing the inherent inadequacy of the remedy adopted in Batson to "eliminate” discrimination, Justice Marshall emphasized that "[a]ny prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are ill equipped to second-guess those reasons” (id., at 105-106). More troubling, "[e]ven if sill parties approach the Court’s mandate with the best of conscious intentions, that mandate requires them to confront and overcome their own racism on all levels” (id., at 106). Justice Marshall doubted they could meet that challenge, emphatically concluding that Batson would "not end the racial discrimination that peremptories inject into the jury-selection process” and that this goal will only be realized "by eliminating peremptory challenges entirely” (id., at 102-103). From the experience with our cases we, too, now see how correct Justice Marshall was.
Our Court, of course, has recognized and embraced the Supreme Court’s historic half-step Batson remedy (see, People v Jenkins, 75 NY2d 550, supra; People v Kern, 75 NY2d 638; People v Hernandez, 75 NY2d 350, affd 500 US —, 111 S Ct 1859). In Kern, we evenhandedly condemned discriminatorily motivated peremptory strikes by defense lawyers. We have recognized that discrimination in the jury selection process "undermines public confidence in the fairness of our system of *328 justice * * * and is repugnant to the just operation of a free society” (People v Jenkins, supra, at 558). Indeed, jury service —a "privilege [and duty] of citizenship” — is a civil right established by our State Constitution (NY Const, art I, §§ 1, 11; Civil Rights Law § 13) and a means of participating in government (People v Kern, supra, at 651-652).
The untenable duality of "arbitrary and capricious” peremptories (4 Blackstone, Commentaries, at 353; see, Batson v Kentucky, 476 US 79, 102, supra [Marshall, J., concurring]) and the constitutionally required assertion of "adequate” neutral reasons, combined with the ease with which purportedly neutral reasons can be articulated, recently evoked a call that the Legislature reexamine the existing peremptory system (see, People v Hernandez, 75 NY2d 350, 359, supra [Titone, J., concurring]; see also, 1990 Report of Advisory Comm on Grim Law and Procedure, reprinted in 1990 McKinney’s Session Laws of NY, at 2856-2857; 1976-1977 Interim Report of Subcommittee on Jury System). The Legislature’s attention has been summoned to many bias-related crime victim bills that are being debated this Session (see, e.g., S3576 and A5921; S3695 and A6235; S3696 and A6234), and for that reason also, we believe the call to attention and action with respect to the peremptory challenges problems becomes all the more urgent at this time.
The United States Supreme Court’s effort at a "middle ground” remedy in Batson, which establishes the goal of eliminating discriminatory jury selection while simultaneously preserving the common-law peremptory process, appears therefore to be disserving both interests (Serr and Maney, Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance, 79 J Crim L & Criminology 1, 2, 62 [1988]; see, Note, Batson v. Kentucky: A Half Step in the Right Direction, 72 Cornell L Rev 1026, 1038, 1046 [1987]). Considerable secondary, scholarly authorities since the Batson decision have focused on the inadequacy of its remedy and the need to eliminate or substantially alter the existing peremptory challenge system. Commentators have catalogued the veritable mine field of litigation generated by Batson, demonstrating that the effort to have it both ways has resulted in an "enforcement nightmare” (Pizzi, Batson v. Kentucky: Curing the Disease but Killing the Patient, 1987 Sup Ct Rev 97, 134).
The proliferation of Raison-generated trial court colloquies, *329 counterproductive diversions and appellate cases have confirmed William Pizzi’s observation: "If one wanted to understand how the American trial system for criminal cases came to be the most expensive and time-consuming in the world, it would be difficult to find a better starting point than Batson” (Pizzi, Batson v. Kentucky: Curing the Disease but Killing the Patient, 1987 Sup Ct Rev 97, 155; see, Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts, 56 U Chi L Rev 153, 170-201 [1989]).
Moreover, the further procedural fragmentation of the already unduly lengthened jury selection process (see, People v Boulware, 29 NY2d 135, cert denied 405 US 995; CPL 270.25), by arithmetic and percentile calculations and intermittent persistent interruptions reflected in the remittal order in Bolling for a hearing (see, majority opn, at 325), is counterproductive and unwise. Further, in a relatively short time span, our Court and the Appellate Division have been grappling with Batson case after Batson case, raising a seemingly endless variety of issues and permutations, manifesting the intractable struggle of the lower courts to implement the unmanageable and self-contradictory Batson remedy (see, e.g., People v Simmons, 171 AD2d 1053, affd 79 NY2d 1013; People v Brooks, 176 AD2d 812, lv granted 79 NY2d 853; People v Hernandez, 176 AD2d 481, lv granted 79 NY2d 858; People v Hawthorne, 175 AD2d 880, lv granted 79 NY2d 858; People v McArthur, 178 AD2d 612, lv denied 79 NY2d 950; People v Childress, 177 AD2d 498, lv denied 79 NY2d 945). It has become virtually impossible for appellate courts or trial courts to discern proper gradations and variations and to provide meaningful procedural guidance guaranteeing some measure of consistent application. The Bolling case dramatically demonstrates the practical and intractable nature of these procedural diversions and digressions.
Indeed, considerable commentary analyzing the inadequacies of the Batson remedy has similarly concluded that the existing peremptory challenge system needs reexamination with a view toward purging the jury process of this device which preserves and hides considerable invidious discrimination (see, McMillian and Petrini, Batson v. Kentucky: A Promise Unfulfilled, 58 U Mo KC L Rev 361, 374 [1990]; Gurney, The Case for Abolishing Peremptory Challenges in Criminal Trials, 21 Harv CR-CL L Rev 227, 244, 283 [1986]; Massaro, Peremptories or Peers? — Rethinking Sixth Amendment Doctrine, Images, and Procedures, 64 NC L Rev 501, 560-561 *330 [1986]; Brown, McGuire and Winters, The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse, 14 New Eng L Rev 192, 233-234 [1978]; see also, Note, Redefining the Harm of Peremptory Challenges, 32 Wm & Mary L Rev 1027, 1029 [1991]; Note, The Elimination of Racism from Jury Selection: Challenging the Peremptory Challenge, 32 BC L Rev 433, 485 [1991]; Note, Due Process Limits on Prosecutorial Peremptory Challenges, 102 Harv L Rev 1013, 1014, 1032 [1989]; Note, Moving Closer to Eliminating Discrimination in Jury Selection: A Challenge to the Peremptory, 7 [Part 1] NY L Sch J Hum Rts 204, 234, 239-242 [1989]; Comment, Jury Discrimination: The Peremptory Challenge as a Racially Discriminatory Device, 12 S U L Rev 189 [1986]; Comment, Curbing Prosecutorial Abuse of Peremptory Challenges — The Available Alternatives, 3 W New Eng L Rev 223, 245-246 [1980]). Unfortunately, the Batson procedural hurdles have become "less obstacles to racial discrimination than they are road maps” to disguised discrimination (Serr and Maney, Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance, 79 J Crim Law & Criminology 1, 59 [1988]).
The United States Supreme Court’s continuing efforts to combat the corrosive problem of jury selection bias are instructive and demonstrate the dynamic nature of the remedial situation. Swain v Alabama (380 US 202, supra) tolerated discriminatorily motivated peremptory challenges (see also, CPL 270.25). In 1983, despite its denial of certiorari in McCray v New York (461 US 961), the United States Supreme Court exhibited its disquietude with the status quo by extraordinary dissenting and concurring expressions in that case predicting —almost promising — imminent change. The change came in 1985 in Batson — the partial fulfillment of that promise (476 US 79, supra). Since then, in a series of rulings, the United States Supreme Court has continued to struggle with the Batson half-step remedy and has continued to push the stone up the mountain, paving the way towards eventual elimination of the peremptory process. The United States Supreme Court’s recent expressions, relegating responsibility for implementation of this unworkable remedy to the trial courts, evince the impracticality and woeful unevenness of its application (see, e.g., Powers v Ohio, 499 US —, —, 111 S Ct 1364, 1374 ["It remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremp *331 tory challenges as a mask for race prejudice”]; Edmonson v Leesville Concrete Co., 500 US —, —, 111 S Ct 2077, 2089 ["The same approach applies in the civil context, and we leave it to the trial courts in the first instance to develop evidentiary rules for implementing our decision”]; see also, Ford v Georgia, 498 US —, 111 S Ct 850). This inverted rule-making delegation merely postpones the day of reckoning.
We are persuaded to urge this fundamental reexamination of the peremptory challenge system because, even under Batson, we find peremptories to be "probably the single most significant means by which such prejudice and bias [are] injected into the jury selection system” (Imlay, Federal Jury Reformation: Saving a Democratic Institution, 6 Loy LA L Rev 247, 270 [1973]), which creates a great paradox and semantical subterfuge. To be sure, the peremptory system evolved to ensure a fair trial and impartial jury. But when such challenges "are perverted and transformed into tools of bias and racism, the reasons for peremptory challenges no longer exist, and they should be eliminated” (McMillian and Petrini, Batson v. Kentucky: A Promise Unfulfilled, 58 U Mo KC L Rev 361, 374 [1990]).
When a peremptory strike is no longer peremptory, by definition, because an explanation is required by Batson, and when a remedy is not a remedy because the remedy ironically defeats or suppresses the stated purpose, then strong measures — stronger measures than Batson — are needed (see and compare, Shelley v Kraemer, 334 US 1, and Brown v Board of Educ., 349 US 294). It is time for the Legislature to come to terms with the undisputed fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate’ ” (Batson v Kentucky, supra, at 96, quoting Avery v Georgia, 345 US 559, 562), and that the Batson effort has failed to fulfill its stated goal of eradicating invidious discrimination from the jury selection process.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur with Judge Simons; Judge Bellacosa concurs in a separate opinion in which Chief Judge Wachtler and Judge Titone also concur.
In People v Bolling: Order modified and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
*332 In People v Steele: On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed.