■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL CHAPMAN, Appellant.—Judgment, Supreme Court, Bronx County (Ivan Warner, J.), rendered November 28, 1989,

convicting the defendant, upon a jury verdict, of robbery in the first degree and sentencing him, as a predicate violent felony offender, to an indeterminate term of imprisonment of from eleven to twenty-two years, unanimously affirmed.

Following the second round of voir dire at the joint trial of the defendant and his co-defendant Michael Atkins, the People moved for a mistrial on the ground that defense counsel had exercised their peremptory challenges in a discriminatory manner. In the alternative, the People requested that the defense be directed to articulate race-neutral reasons for the exercise of their challenges. The court asked the prosecutor to withdraw the motion until the end of the third round of voir dire, at which time the court would permit renewal of the motion.

At the conclusion of the third round, the People orally renewed their motion based on defense counsel's exercise of twelve of their fifteen peremptory challenges to exclude eight caucasian and four hispanic individuals from the jury. Both defendants are black. The court directed the parties to submit papers. Defense counsel's response to the People's motion for a mistrial addressed the applicability of the ruling in *Batson v Kentucky* (476 US 79) to the defense. (The Court of Appeals had not yet decided *People v Kern,* 75 NY2d 638, *cert denied* 498 US 824, in which the *Batson* prohibition against exercising peremptory challenges in a discriminatory manner was held to apply to the defense as well as to the prosecution.) The defense also argued that the People had not made out a prima facie case of purposeful racial discrimination but did not set forth any race-neutral explanations for the exercise of their challenges.

On October 4, 1989, the Supreme Court granted the People's motion for a mistrial. The court first determined that the ruling in *Batson v Kentucky (supra)* was applicable to the defense and then concluded that the People had presented a prima facie case of purposeful discrimination which the defense had failed to rebut since they refused to articulate race-neutral reasons for their challenges.

Defense counsel strenuously objected to the court's characterization of their failure to articulate race-neutral reasons in their response as a "refusal". They maintained that they were only required to provide such reasons if the court first found that *Batson (supra)* applied to the defense and then that the People had established a prima facie case of discrimination. Counsel added that they were prepared to provide such expla-

nations but the court declined to hear them, reiterating its position that the defense had failed to meet their burden by refusing to provide race-neutral reasons for their challenges.

After the jury was dismissed, defense counsel moved to reargue and again offered to provide race-neutral reasons for the exercise of their challenges. The court determined that the issue was moot since the jury had been dismissed and further denied defense counsel's motion for the Judge to recuse himself.

Jury selection commenced in the new trial that same afternoon. At the conclusion of the trial, the defendants were convicted of robbery in the first degree.

By denying the defendant the opportunity to articulate nonpretextual, race-neutral reasons for the exercise of his peremptory challenges, after determining the applicability of *Batson (supra)* to the case, the Supreme Court precluded him from attempting to rebut the People's prima facie showing and exceeded its authority in discharging the ten jurors selected and sworn at his first trial.

Purposeful racial discrimination in the exercise of peremptory challenges, whether exercised by the prosecution or the defense, is prohibited by both the Civil Rights and the Equal Protection Clauses of article I (§ 11) of the New York Constitution *(People v Kern, supra)*. Once a prima facie case of discrimination is demonstrated, the burden shifts to the other side to articulate nonpretextual, racially neutral reasons for the suspect peremptory challenges *(Batson v Kentucky, supra; People v Kern, supra; People v Jenkins,* 75 NY2d 550).

The Supreme Court, while sufficiently prescient in ruling that *Batson's* prohibitions apply to the defense, nevertheless failed to follow *Batson's* prescribed procedures. The defendant was not required to articulate reasons for his challenges unless and until the court ruled that *Batson* applied to the defense and the prosecution established a prima facie case.

While the error is certain, the appropriate remedy to be fashioned is not so easily identified. Where a court improperly precludes a party from attempting to demonstrate that nonpretextual, race-neutral reasons exist for the exercise of its peremptory challenges, the Court of Appeals has indicated that the preferred procedure is to remit the matter for a hearing to allow the party that opportunity *(see, People v Jenkins, supra; see also, Batson v Kentucky, supra)*. If a determination is then made that the explanations are not satisfactory, the judgment of conviction should be vacated and

a new trial ordered *(supra)*. If the prima facie determination of discrimination is rebutted, the judgment of conviction should be amended to show that result *(supra)*.

Ironically, the trial court's error afforded the defendant a viable remedy—a new trial. Although the defendant seeks reversal of his conviction and yet another trial, we find that the trial which resulted in his conviction, to which he assigns no error, sufficiently remedied the error committed during jury selection at the first trial. There is nothing in the record to substantiate the defendant's claim that he was intimidated by the court's earlier error and warning that he would be taking careful note of defense counsel's exercise of its challenges at the new trial. Instead, the record reveals that defense counsel actively participated in the new voir dire and continued to exercise its peremptory challenges. We therefore conclude that, despite the trial court's error, the defendant has been accorded his "constitutional right to a particular jury chosen according to law, in whose selection he has had a voice (NY Const, art I, § 2)" *(People v Ivery, 96 AD2d 712)*. Concur—Murphy, P. J., Carro, Rosenberger, Wallach and Ross, JJ.