OPINION OF THE COURT
Simons, J.
These appeals, involving application of the rules developed in Batson v Kentucky (476 US 79), raise two questions: (1) whether a prima facie showing of discrimination may be *320 established before completion of the jury selection process and (2) whether defense counsel established a prima facie case that the prosecution had violated the Equal Protection Clauses of the Federal and State Constitutions by exercising peremptory challenges for discriminatory purposes (US Const 14th Amend; NY Const, art I, § 11). In People v Bolling, we hold that defense counsel established a prima facie case and, inasmuch as the prosecutor failed to provide racially neutral reasons for his challenges, the judgment must be modified. In People v Steele, we hold that a prima facie case was not established and consequently affirm the order of the Appellate Division.
In Batson v Kentucky (supra) the prosecutor used peremptory challenges to strike four African-Americans from the jury so that defendant, an African-American, was tried by an all-Caucasian jury. The Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment forbids the use of peremptory challenges solely for discriminatory purposes. Finding that a prima facie case of discrimination had been established, the Court remanded the case to enable the prosecutor to provide racially neutral reasons for the strikes or, in the absence thereof, for a new trial. The Court set forth three steps for establishing prima facie that the prosecutor used peremptory challenges to discriminate in selecting the petit jury. The defendant must show (1) that he or she is a member of a cognizable racial group, (2) that the prosecutor’s use of peremptory challenges resulted in the exclusion of members of defendant’s race from the jury, and (3) facts and other relevant circumstances sufficient to raise an inference that the prosecutor used the challenges for discriminatory purposes (Batson v Kentucky, supra, at 96; People v Jenkins, 75 NY2d 550, 555-556; People v Scott, 70 NY2d 420, 423). Once the defendant makes a prima facie showing of discrimination, the burden shifts to the prosecution to present racially neutral explanations for the challenges. It cannot rebut defendant’s prima facie case, however, by merely alleging its good faith or by claiming that the stricken jurors would be biased because they shared defendant’s race (Batson v Kentucky, supra, at 97-98; People v Scott, supra, at 423). We have held that the discriminatory use of peremptory challenges also violates the Equal Protection Clause of the State Constitution (see, People v Kern, 75 NY2d 638).
In the matters before us, defendants satisfied the first two requirements by showing that they are African-Americans and that the prosecution struck several African-American *321 jurors. To satisfy the third, and raise an inference of discrimination, defendants allege a "pattern” of strikes used by the prosecution against African-Americans during the jury selection process (see, Batson v Kentucky, supra, at 97).
In People v Bolling, defense counsel’s challenge came after counsel had questioned the first 12 prospective jurors. Five African-Americans were examined and all were dismissed, four by the prosecution. In People v Steele, defendant bases her claim on strikes made during selection of the first 21 jurors. At that time, six African-Americans had been examined and the prosecution had removed three by peremptory challenges.
We conclude that a defendant may assert a claim that peremptory challenges are being used for discriminatory purposes when those challenges are exercised, regardless of whether jury selection has been completed. Although Batson addressed the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded, that was only one of the " ‘multiple ends’ ” the decision was designed to serve (see, Allen v Hardy, 478 US 255, 259 [quoting from Brown v Louisiana, 447 US 323, 329]). The Supreme Court recognized, as have we, that a prosecutor’s discriminatory use of peremptory challenges violates the Equal Protection Clause not only because it violates the defendant’s rights but also because it harms excluded jurors and the community-at-large (see, Powers v Ohio, 499 US —, —, 113 L Ed 2d 411, 422 [Caucasian defendants have standing to object to prosecutor’s strikes against African-American jurors]; People v Jenkins, 75 NY2d 550, 557, supra; People v Kern, 75 NY2d 638, 652, supra). The purpose of the Batson rule is to eliminate discrimination, not minimize it and, therefore, it is inconsequential that, after defense counsel voiced their objections, these prosecutors permitted African-Americans to sit on the jury. ‘‘[T]he exclusion of any blacks solely because of their race” is constitutionally forbidden (People v Jenkins, 75 NY2d 550, 559, supra [emphasis in original]). The wrong may occur after only one strike and the prosecution cannot defer the objection and later overcome it with evidence that the jury, as finally selected, contained a proportionate number of African-Americans (see, United States v Johnson, 873 F2d 1137, 1139-1140; United States v Clemons, 843 F2d 741, 747, cert denied 488 US 835; People v Jenkins, 75 NY2d 550, 557, supra). Accordingly, the motions were appropriate when made and we focus on whether defendants established a prima facie case of *322 discrimination in the cases before us. The question is one of law reviewable by this Court (People v Scott, 70 NY2d 420, 425, supra).

People v Bolling

Jury selection began with the court excusing a number of disqualified persons on the venire. The court then filled the jury box with 16 potential jurors. Five of the first 12 were African-American and, after counsel had examined them, challenges were exercised. No jurors were excused for cause. The prosecution struck five jurors peremptorily, four African-Americans and one of Asian ancestry. Defense counsel struck the one remaining African-American and three non-African-Americans. Defense counsel then objected to the prosecution’s use of peremptories to exclude the four African-Americans. The court failed to rule on the objection and jury selection continued until the end of the day. The remaining four potential jurors in the original panel of 16 were then chosen without objection. Two of the four were African-American.
The next day, defense counsel renewed his objection, amplifying his claim of discrimination by asserting that two of the African-Americans the prosecution excluded were "pro-prosecution” because they had ties to law enforcement: one was the girlfriend of a police officer and a crime victim and the other was a security supervisor in charge of preventing crime. The Assistant District Attorney did not deny counsel’s statement but noted two African-Americans had been selected to sit from the four jurors questioned after the objection had been made. Based upon this, the court determined that there had been no attempt to systematically exclude African-Americans. Defense counsel did not renew his Batson objection thereafter and ultimately it appears that five of the selected jurors were African-American, with an additional African-American person sitting as an alternate.
The Appellate Division, First Department, affirmed, noting that the jury as chosen consisted of at least five African-Americans and finding that defendant had failed to establish a prima facie case that the prosecutor exercised peremptory challenges in a purposefully discriminatory manner (People v Bolling, 166 AD2d 203).

People v Steele

The same process was used for jury selection in Steele. Of *323 the first 12 prospective jurors seated, nine were Caucasian and three were African-American. After the prosecution peremptorily challenged two of the three African-Americans, defense counsel objected that the prosecution was discriminating in the exercise of its challenges because defendant was an African-American female and the two prospective jurors stricken by the prosecution were also African-American females. He offered no other evidence that the strikes were exercised for discriminatory purposes. The court found that, inasmuch as they were only talking about two jurors, no pattern had been established but instructed defense counsel that he could renew his application if a pattern developed. The next four prospective jurors included one African-American. The prosecution exercised no peremptory challenges, while defense counsel exercised three against Caucasians. The next three jurors included two African-Americans and the prosecution and defense each excluded one of them. At this point, defense counsel again objected to the prosecution’s exclusion of African-Americans. The court overruled the objection, noting that two of the jurors selected were African-American and stating that it could see no pattern of discrimination. Two Hispanic women were then considered, with each side peremptorily striking one. Defense counsel objected for the third time because the prosecution had used its challenge to exclude another “non-white.” The court merely noted the objection. Thus, at the conclusion of the first day of jury selection, 21 prospective jurors had been examined, six African-Americans and 15 non-African-Americans. The prosecution struck three African-Americans and one non-African-American peremptorily. Jury selection was concluded the next day.
On appeal, the Appellate Division affirmed the judgment, finding defendant had failed to establish a prima facie case of purposeful discrimination. The court emphasized that, although three African-Americans were excluded, three others were not challenged by the prosecution (People v Steele, 171 AD2d 599).
Defendant Steele rests her claim of discrimination on the selection process prior to the third objection, after 21 prospective jurors had been examined. At this point, the prosecution had exercised three of four peremptory challenges to exclude three of six African-Americans.
There are no fixed rules for determining what evidence will give rise to an inference sufficient to establish a prima facie *324 case of discrimination. In Batson the Supreme Court listed, as examples, a pattern of strikes or questions and statements made by the prosecutor during voir dire suggesting discriminatory motives (see, Batson v Kentucky, 476 US 79, 97, supra; see also, People v Jenkins, 75 NY2d 550, 556, supra). The defendant may also raise an inference of discrimination by making a record comparing Caucasians accepted with similarly situated African-Americans challenged, or by establishing objective facts indicating that the prosecutor has challenged members of a particular racial group who might be expected to favor the prosecution because of their backgrounds (see, e.g., United States v Jordan, 893 F2d 182, 184, vacated on other grounds 496 US 902; People v Scott, 70 NY2d 420,425, supra). The mere inclusion of some members of defendant’s ethnic group will not defeat an otherwise meritorious motion (United States v Clemons, 843 F2d 741, 747, supra; People v Jenkins, supra, at 557). Although the racial distribution of those on the jury, as compared to the population generally, is not relevant to establish a prima facie case (see, Holland v Illinois, 493 US 474, 482-483; People v Jenkins, supra, at 558), a disproportionate number of strikes challenging members of a particular racial group within a venire may be sufficient to create an inference establishing a prima facie claim (see, Batson v Kentucky, supra, at 97; People v Jenkins, supra, at 556). Generally, however, percentages will not be conclusive of the issues (see, United States v Jordan, 893 F2d 182, 184, supra; United States v Lewis, 892 F2d 735, 736; but see, United States v Alvarado, 923 F2d 253, 255-256). Finally, when a Batson objection has been made, defendant is entitled to the benefit of the proposition that peremptory challenges permit those inclined to discriminate to do so (see, Batson v Kentucky, supra, at 96; and see generally, 2 LaFave and Israel, Criminal Procedure § 21.3 [1991 Pocket Part]).
Because we have no record of the questions posed during voir dire in these cases, our determination must rest upon the claimed discriminatory pattern of strikes as they relate to the prospective jurors examined and the few facts developed during colloquy.
In Bolling, the prosecution exercised five peremptory challenges, four to exclude African-American members of the venire. African-Americans comprised 42% of the 12 prospective jurors, and 80% of them were excluded by the prosecution. *325 * This disproportionate number of challenges to African-American prospective jurors coupled with defendant’s uncontested assertion that two of the four jurors excused by the Assistant District Attorney had proprosecution backgrounds was sufficient to raise an inference that the Assistant District Attorney had used his peremptories to discriminate. Accordingly, the court should have required the prosecutor to give reasons establishing that the strikes were for racially neutral reasons. If he was unable to do so, the court should have sustained the objection, and seated the juror notwithstanding the prosecutor’s challenge (see, People v Kern, 75 NY2d 638, supra). The reasons given for denying the motion, that the prosecution had subsequently accepted two African-American jurors, was legally irrelevant.
Defendant Steele also relies on a pattern of strikes. In her case, the prosecution struck three of the six African-Americans available. While the prosecutor exercised three of her four challenges against African-Americans, that alone is not sufficient to establish a pattern of exclusion of African-Americans. In the absence of a record demonstrating other facts or circumstances supporting a prima facie case, the defendant failed to establish a pattern of purposeful exclusion sufficient to raise an inference of discrimination.
We have considered the remaining issues raised by defendants and find none is a ground for reversal.
Accordingly, in People v Bolling the order of the Appellate Division should be modified by remitting to Supreme Court, New York County, for a hearing to afford the People an opportunity to provide racially neutral reasons for the exercise of their peremptory strikes. In the absence of such explanation, the judgment of conviction should be vacated and a new trial ordered. Should satisfactory explanation be provided by the People, the judgment of conviction should be amended to show that result (see, Batson v Kentucky, 476 US 79, 100, supra; People v Jenkins, 75 NY2d 550, 560, supra). In People v Steele the order should be affirmed.

 This is not to say that if the strikes were proportionate to the number of African-Americans on the venire that there could be no pattern of strikes. Disproportionality is only one indicia of the discriminatory use of peremptory challenges.