■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICIA SMITH, Also Known as VANESSA HAYWOOD, Appellant.—Judgment, Supreme Court, New York County (Renee White, J.), rendered May 31, 1990, convicting defendant, after a jury trial, of two counts of grand larceny in the fourth degree, and sentencing her, as a predicate felony offender, to concurrent prison terms of 2 to 4 years, affirmed.

Defendant argues that since she is an African-American woman, the trial court should have required the People to offer race- and gender-neutral explanations for peremptory challenges, exercised during the first round of jury selection, to two minority women, one an African-American, and the other with an Hispanic surname. Absent a prima facie showing of purposeful discrimination on either racial or gender grounds, as required by *Batson v Kentucky* (476 US 79 [1986]), *People v Bolling* (79 NY2d 317 [1992]) and *People v Irizarry* (165 AD2d 715 [1990]), the People were not required to give any reasons for their peremptory challenges (CPL 270.25 [1]). No prima facie case was established here.

Only a part of the jury voir dire was recorded. Thus the questions put by the prosecutor and defense attorney to prospective jurors were not recorded. From the record the following facts appear. Eighteen persons were seated during the first

round of jury selection. The prospective jurors were given questionnaires which are not a part of this record and which were used to orally answer questions. As to prospective juror Coffield, the record indicates that she gave her specific address and that she may have had a problem in obtaining a check for prior service on a grand jury. She also had two brothers on the police force. The record also indicates confusion in answering two questions, assuming the record is accurate. It indicates that Ms. Coffield had one child, Charley, two years old, but Charley also worked somewhere in Suffolk County. When asked if she discussed cases with her police officer brother, Ms. Coffield replied, "Well, if I have a problem I would." Ms. Coffield's entire recorded interview was as follows:

"THE COURT: Okay, thank you. Okay, Ms. Coffield. Okay, tell us about yourself.

"JUROR: All right, I was born here in Harlem, I was born at thirty one West 131st Street. And I live at now 20 West 131st.

"THE COURT: We don't have to know your address, we just want to know the neighborhood. We don't have to know where you live. Are you employed?

"JUROR: No. High school.

"THE COURT: Did you finish high-school?

"JUROR: Yes, Whitley High School, and one child, Charley, two years old.

"THE COURT: Does he work?

"JUROR: I don't know where Charley work at. Charley work some where out in Suffolk county, Long Island.

"THE COURT: What kind of work do you do?

"JUROR: I'm a housewife.

"THE COURT: Do you have any hobbies?

"JUROR: I play piano.

"THE COURT: Have you served on a jury before?

"JUROR: Yes, I was down here at—I guess it I *[sic]* was down here. I guess it was the grand jury.

"THE COURT: When was that? How long ago?

"JUROR: The last two years.

"THE COURT: Two years ago?

"JUROR: Uh-huh. Because they in turn sent me a check.

"THE COURT: They did send you a check or they did not?

"THE COURT: You have a complaint about that? You didn't get paid? Did everything work out okay with that?

"JUROR: Oh, you can't hear me.

"THE COURT: Speak a little bit louder.

"JUROR: Then it says you or any of your relatives close relative *[sic]* engaged in law or law enforcement. I had two brothers and they are both on the police force.

"THE COURT: Do you see them frequently? Because they live nextdoor.

"THE COURT: You discuss cases with him?

"JUROR: Well, if I have a problem, I would.

"THE COURT: Thank you very much."

The prosecutor challenged Ms. Coffield for cause on the basis of her lack of understanding of the questions, of reading the questions after the court told her not to and of her statement that if she had a problem, she would come up later and discuss it then. The challenge for cause was denied.

As to Ms. Ramos (apparently incorrectly designated as Amos in the record), the record reveals that she was born in Puerto Rico, had been a victim of a crime (specifics unknown), had two brothers who were police officers and a cousin that was a correctional officer. Specifically, the record indicates the following concerning her responses to questions:

"THE COURT: Okay Ms. Amos *[sic]*. Tell me about yourself.

"JUROR: [The following appears to be the prospective juror's answer, but it is not designated as such in the record:] I live in the upper west side of Manhattan. I born in Puerto Rico. I work east side of the hospital. I'm single, go to school and work. I have been a victim of a crime. I have two brothers that are police officers, and a cousin that's a correctional officer.

"THE COURT: And do you talk to them frequently about your work?

"JUROR: Not specific, just routine.

"THE COURT: Is there anything on the next page that is a problem?

"JUROR: Not really."

The People peremptorily challenged Ms. Coffield and Ms. Ramos. The defense attorney then objected "to the People using their peremptory challenges to take the two minority juror *[sic]*". The attorney continued that they were the only minority jurors remaining on the panel and there was a denial of "my client's equal right." The prosecutor then stated that jurors four and nine were minority.

On this record a prima facie case was simply not established *(Batson v Kentucky, supra; People v Kern,* 75 NY2d 638 [1990];

*People v Jenkins,* 75 NY2d 550 [1990]; *People v Bolling, supra).* The thrust of the defendant's argument is that the prosecutor struck all minority women from the first eighteen prospective jurors. First, no challenge based on gender was made at all. Second, the defendant's contention is not supported by the record. While Ms. Ramos stated that she was born in Puerto Rico and was apparently Latino, it can only be assumed that Ms. Coffield was black since she lived in Harlem. In this day of increasing numbers of whites who reside in and are visible in Harlem, this assumption can be challenged. Moreover, if the assumption is made as to Ms. Coffield, it must also be assumed that Lydia Torres who lived in East Harlem and was sworn in as a juror was also Latino, thus cutting the heart out of the defendant's argument that all minority women of the first eighteen prospective jurors were excluded by the prosecutor. It is insufficient here for the defense attorney to make a *Batson* challenge when the record is not specific as to race and ethnicity. Third, even assuming that the basis of the objection is the fact that Ms. Coffield was black and Ms. Ramos Latino, the record simply does not establish a prima facie case requiring that the prosecutor give race-neutral reasons for the peremptory challenges. In other words there was no prima facie showing that either Ms. Coffield or Ms. Ramos was excluded because she was black or Latino.

Although the record is not entirely clear, of the first seven jurors sworn, two were women and at least one was a member of a minority group. The composition of the final jury apparently included four or five females. The two alternate jurors were female.

As stated in *People v Bolling* (79 NY2d 317, 323-324, *supra),* what constitutes a prima facie showing of discrimination depends on the circumstances of each case. It may be based upon a pattern of strikes, the specific questions put by the prosecutor to the prospective jurors, a comparison of Caucasions accepted with African-Americans or Latinos excluded, the establishing of objective facts showing a prospective juror might favor the prosecution or other factors. The totality of the circumstances here simply does not make out a prima facie showing of discrimination. Concur—Kupferman, Kassal and Smith, JJ.

Milonas, J. P., and Wallach, J., dissent in a memorandum by Wallach, J., as follows: I would hold this appeal in abeyance, and direct that the matter be remanded for a hearing at which the People would be required to offer race- and gender-neutral explanations for their two peremptory challenges,

exercised during the first round of jury selection, against an African-American and an Hispanic woman. If no justification or an insufficient explanation appears, I would reverse this conviction and order a new trial.

The fact that in this case the jury, as finally constituted, may have contained minority and female members does not foreclose the present claim by defendant, an African-American woman, that the trial court erred in refusing to examine the good faith of the People's strikes *(Batson v Kentucky,* 476 US 79). As the Court of Appeals recently held in *People v Bolling* (79 NY2d 317, 321), " '[T]he exclusion of *any* blacks solely because of their race' is constitutionally forbidden *(People v Jenkins,* 75 NY2d 550, 559, *supra* [emphasis in original]). The wrong may occur after only one strike and the prosecution cannot defer the objection and later overcome it with evidence that the jury, as finally selected, contained a proportionate number of African-Americans [citations omitted]."

It appears here that each of the venirewomen in question had close relatives who were law enforcement or correction officers. This same circumstance generated the following pertinent observation in *Bolling (supra,* at 325): "defendant's uncontested assertion that two of the four jurors excused by the Assistant District Attorney had proprosecution backgrounds was sufficient to raise an inference that the Assistant District Attorney had used his peremptories to discriminate."

Accordingly, a hearing is required.