*199 OPINION OF THE COURT
David Goldstein, J.
This action is presently on trial before the court and a jury. The indictment charges defendant with robbery in the first and second degrees, emanating from an incident which occurred on September 19, 1993, at 92nd Street and Elmhurst Avenue, in Queens. At that time and place, it is alleged that defendant and two others robbed complainant, Jose Escobar, by use of what appeared to be a gun.
In the course of the jury selection, in the third round, defendant raised an issue as to the propriety of the prosecutor’s exercise of his eighth peremptory challenge, alleging a violation of Batson v Kentucky (476 US 79). The claim advanced was that the prosecution had discriminated against blacks in selecting the jury.
Actually, the very same claim was made repeatedly by defense counsel throughout jury selection. Notwithstanding the barren claim of discrimination here, it would be crystal clear to anyone who observed jury selection in this case that selection proceeded without a glimmer of discriminatory motive. Nor should there be any reason to do so in this case, involving an incident between three Hispanics, one Caucasion and no racial overtones. Notwithstanding the apparent attempt to create a record for the future, it has been repeatedly recognized that the propriety of the exercise of preemptory challenges is a matter more appropriately addressed to the discretion of the trial court (see, People v Hernandez, 75 NY2d 350, 356). After all, in terms of fleshing out pretextual reasons to mask a discriminatory purpose, like a fine show or a good movie, you have to be there to really appreciate it.
In the first round of jury selection, after an unsuccessful challenge for cause, the prosecutor exercised his first peremptory challenge to the only black prospective juror in the 14-member panel. Although the juror was borderline to being excused for cause, defense counsel immediately raised a Bat-son challenge, which was denied, the court finding no discriminatory pattern, nor any basis to hold the juror in the courtroom, pending future rounds of jury selection. Although, in the past, this court has advocated such a procedure where there is an emerging pattern of discrimination (see, People v Moten, 159 Misc 2d 269, 272, 279-280), plainly, this was not such a case.
The rather interesting issue in this case arose in the third *200 and last round of selection, when the prosecutor exercised his 8th and last peremptory challenge to prospective juror No. 5. At that time, 10 jurors had been chosen, 9 in the first two rounds. Of significance is that defendant had used 14 of 15 peremptory challenges. Confronting the parties, in terms of selection, were 10 remaining prospective jurors, four of whom were black, one Asian, one Indian and four white. Of the next four to be considered, three were black — jurors Nos. 5, 7 and 8. As the prosecutor subsequently explained, he excused No. 5 because he thought defense counsel would exercise his last peremptory to excuse No. 6, a Caucasion, which would permit prospective jurors Nos. 7 and 8, both black, to be seated as the 11th and 12th sworn jurors. Under those circumstances, the District Attorney peremptorily challenged No. 5 because, in terms of strategy, he preferred to have Nos. 7 and 8 on the panel. As he stated after the Batson challenge was made, his motivation was not discriminatory in nature, since all three were black, but rather, resulted from the more favorable responses to questions and the backgrounds of Nos. 7 and 8 in relation to that of No. 5.
Actually, the prosecutor’s belief as to how jury selection would proceed was almost completely accurate, with the exception that defendant did not challenge No. 6. As a result, No. 6 was selected as juror No. 11, No. 7 as juror No. 12 and No. 8 as alternate No. 1. Of the 12 jurors and 3 alternates selected for the case, there are 9 whites, 4 blacks, 1 Hispanic and 1 Asian. In terms of those available to be selected, the first round during which 7 sworn jurors were chosen consisted of 12 whites, 1 black and 1 Hispanic who was selected as a juror.
The operative legal standard is clear. A Batson claim may be made at any time, as peremptory challenges are exercised, whether or not jury selection has been completed (People v Bolling, 79 NY2d 317, 321; People v Green, 181 AD2d 693, lv denied 79 NY2d 1049). Once a Batson claim is interposed, the trial court must determine whether a prima facie showing of discriminatory use of peremptory challenges has been made (see, People v Childress, 81 NY2d 263, 266-267; People v Bolling, supra, at 323-324; People v Scott, 70 NY2d 420, 425; People v Brown, 193 AD2d 611). If a prima facie showing is made of a discriminatory exercise of peremptory challenges, the burden then shifts to the opposing party "to come forward with nonpretextual race-neutral explanations” for the challenges (People v Jenkins, 75 NY2d 550, 556; People v Kern, 75 *201 NY2d 638, 657-658, cert denied 498 US 824; People v Hernandez, 75 NY2d 350, 356, supra).
In our case, although the court did not find a prima facie showing of discrimination, to ease the way for possible future appellate review, the District Attorney was afforded an opportunity, if he wished, to set forth, on the record, the underlying reasons for his exercise of a peremptory challenge in this round. In my view, the rationale ascribed by him was neither pretextual nor discriminatory in nature. Plainly, there were no discriminatory overtones at all. Instead, it typified the type of strategy and planning one might expect to find in any jury selection process, where the underlying motivation of each attorney is to advance the interests of his client, within the judicial confines of selecting a fair and impartial jury.
In my view, there was no basis at all to interpose a Batson challenge in this case, on this record. In selecting a jury, trial counsel ought to exercise some degree of discretion so as to raise a charge of discriminatory conduct only where there is a good-faith basis that there actually has been discriminatory use of challenges. A cursory review of the record here will show that this was not done in this case. Here, discrimination as an issue was injected by defendant, for whatever reason, without any attempt to establish "purposeful” discriminatory conduct. This is not only improper, it is a perversion of the principles which underlie both Batson and Kern (supra), a practice which could well lead the Legislature to reexamine and either revamp or abolish the existing procedure for peremptory challenges. This was the observation and recommendation by Judge Bellacosa for other and more cogent reasons in his concurring opinion in People v Bolling (supra, at 328-329, 331), dealing with the inadequacy of the Batson remedy, which "failed to fulfill its stated goal of eradicating invidious discrimination from the jury selection process.” (People v Bolling, supra, at 331 [Bellacosa, J., concurring].)
Accordingly, upon the foregoing grounds, and for the reasons heretofore set forth on the record, during jury selection, defendant’s objection under People v Batson (supra) is denied in all respects and the prosecutor’s peremptory challenges sustained. Having observed the manner by which the jury selection process proceeded and challenges were exercised, both those for cause and peremptory, there was clearly no discrimination here. Each attorney proceeded in accordance *202 with the applicable rules, both in terms of remarks during voir dire and in the exercise of challenges. In my view, there was no discriminatory conduct here and the only pretext on this record was defendant’s interposition of a Batson challenge.