■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RADLEY M. KING, Appellant. [716 NYS2d 141] —Spain, J. Appeal from a judgment of the County Court of Saratoga County (Scarano, Jr., J.), rendered October 9, 1998, upon a verdict convicting defendant of three counts of the crime of robbery in the first degree.

After a jury trial, defendant was convicted of three counts of robbery in the first degree (Penal Law § 160.15 [2], [3], [4]) for his role as an accomplice in the January 12, 1998 robbery of a supermarket in the Village of Ballston Spa, Saratoga County. The trial testimony established that defendant, armed with a butcher knife, actively participated in the robbery with Freddie Toms and Anthony Mack by, *inter alia,* directing a cashier to put the money from her register in a bag and assisting Toms in taking money from the store's office. Toms was armed with a gun and Mack with a machete. Toms and Mack pleaded guilty and testified against defendant at trial. Upon his convictions, defendant was sentenced to three concurrent terms of 10 to 20 years' imprisonment for each conviction.

On defendant's appeal, we affirm. First, we find no merit in defendant's contention that County Court erred in granting the prosecution's peremptory challenge of the only African-American juror in the venire panel, rejecting defendant's *Batson* objection (*see, Batson v Kentucky,* 476 US 79, 89). A review of the voir dire minutes and *Batson* colloquy demonstrates that defendant failed to identify, allege or develop facts or other relevant circumstances sufficient to raise an inference that the prosecutor used the challenge for discriminatory purposes and, as such, failed to make the required threshold prima facie showing (*see, People v Allen,* 86 NY2d 101, 104; *People v Chil-*

*dress*, 81 NY2d 263, 266-268; *People v Bolling*, 79 NY2d 317, 325).

The subject juror—a married African-American female and mother of three children with a Master's degree and employed as an administrator for a State agency—indicated during voir dire that she had a four-day trip planned to New York City and out of State for a family wedding which would have conflicted with two of the days scheduled for defendant's trial. In objecting to the juror's removal, defense counsel emphasized that the juror was the sole African-American juror and described her as "bright," "intelligent," "highly educated," "responsive," "cheerful" and having "paid careful attention," and merely argued that she had not done anything to establish any basis to challenge her other than her race. While the exclusion of even a single (or the sole) member of a cognizable racial group from the jury for racial reasons might be sufficient in a particular case to raise an inference of discrimination (*see, People v Childress, supra,* at 267; *People v Bolling, supra,* at 321), the inference is not automatic. On this record, defense counsel's generalized assertions were primarily premised upon the absence of a basis to disqualify this juror for cause and did not establish a prima facie case of discrimination (*see, People v Childress, supra,* at 268).

Notably, the prosecutor's voir dire questioning did not give rise to an inference of discriminatory motive and defendant did not demonstrate that others not of his racial group with the same relevant characteristics as the challenged juror were accepted (*see, People v Childress, supra,* at 266-267; *People v Bolling, supra,* 79 NY2d, at 324). To the extent defendant now argues that the challenged juror's background as a crime victim would have favored the prosecution—the juror stated that her home had been burglarized some 20 years earlier—this point was not raised or developed in the *Batson* colloquy and is unpreserved. In any event, numerous other potential jurors who had been crime victims (or whose immediate family members had been) or whose backgrounds might suggest being favorable to the prosecution were also excused based upon their conflicting travel plans and commitments. Thus, County Court correctly ruled that defendant failed to make the requisite prima facie showing and upheld the prosecutor's challenge.

Even if we were to conclude that defendant established a prima facie case of discrimination, we would uphold County Court's alternate holding that the prosecution provided a specific nonpretextual, race-neutral explanation related to this trial for striking this juror, namely, a desire not to ask her to

change her family wedding travel plans scheduled for the anticipated middle of defendant's two-week trial, noting that at least four other jurors were excused for similar conflicts (*see, People v Allen*, 86 NY2d 101, 110-111, *supra*).

Defendant also challenges the propriety of County Court's responses to the certain requests by the jury during deliberations. The jury asked to review items of evidence and, while in the courtroom, requested a reread of the charges which included the definition of robbery and firearms and the accomplice charge. In response, the court provided a supplemental charge to the jury to which no objections were then raised, essentially repeating its original instruction explaining the definitions and elements of robbery in the first degree as charged (Penal Law § 160.15 [2], [3], [4]) and accomplice liability. After the jury resumed deliberations, defendant requested a further charge of the definition of intent, which the court properly denied. We find that County Court properly exercised its discretion by meaningfully responding to the jury's actual request, and that the definition of intent was not within the scope of the request (*see, People v Almodovar*, 62 NY2d 126, 131; CPL 310.30). Further, the court repeatedly made clear to the jury—before and throughout deliberations—that it could at any time request to have the entire charge or any portion thereof reread, and indeed there were many such requests.

However, in our view, County Court's failure to respond to one question posed in one of the jury's last notes was inappropriate and we take this opportunity to comment. The jury began deliberations at 10:30 A.M. and thereafter submitted numerous notes requesting reinstructions regarding accomplice liability and other aspects of the crimes charged to which the court provided responses. The jury began submitting notes around 3:15 P.M. and up until 6:25 P.M. reflecting that it was experiencing difficulty in its deliberations.[1] The court responded, reminding the jurors, *inter alia*, of their oath as jurors and obligation to follow the court's instructions. The jury deliberated until 9:30 P.M. when it submitted a note marked as exhibit N containing three substantive law questions, a request to reread its oath and the question, "[D]oes a [juror] have to [p]ut up with being degraded [and] belittled [and] laughed at?" The note also stated that the jury remained—since lunchtime—not unanimous. The jury also sent a second note stating that

---

1. For example, the jurors asked what would happen if they could not reach an agreement, whether jurors could be "charged with contempt" or voluntarily disqualified, and what should happen "if a juror agrees to the evidence and refuses to accept the law."

"if all disagreements were eliminated, that we will still not be able to find a verdict." It is County Court's failure to respond at all to the question regarding a degraded/belittled juror that defendant argues on appeal constituted reversible error.

Unfortunately, it is not clear from the trial transcript whether the entire note (exhibit N) was disclosed to defense counsel prior to County Court's supplemental instruction. The question at issue regarding the belittled/degraded juror was not read into the record in the presence of counsel or in open court (unlike the other jury notes), and no discussion or charge requests appear on the record pertaining to that particular question.[2] After receiving the notes and briefly discussing them with counsel, the court recessed the deliberations for the night, sequestered the jury and, the following morning, heard argument from counsel. County Court then responded to the jury's three substantive law questions and reread its oath (*see,* CPL 270.15 [2]). The jury returned a guilty verdict a short time later.

Initially, we emphasize that County Court was obligated to give defendant and defense counsel meaningful notice of the precise contents of the jury's note and an advance opportunity to suggest appropriate responses (*see,* CPL 310.30; *People v O'Rama,* 78 NY2d 270, 276-279; *see also, People v Cook,* 85 NY2d 928; *People v Guzman,* 259 AD2d 632). To allow adequate and fair appellate review, this should be reflected in the trial record (*see, People v O'Rama, supra,* at 277-278). However, even if counsel was not informed or notified of the verbatim contents of the belittled/degraded juror question, we find that, in context, the error was not so prejudicial to defendant as to require reversal (*see, People v Agosto,* 73 NY2d 963; *cf., People v Cook, supra; People v O'Rama, supra,* at 279-280). Further, the court's failure to respond to that question did not seriously prejudice defendant, as it "did not concern the crimes charged or the evidence in the case, much less any key issue" (*People v Agosto, supra,* at 966; *see, People v Jackson,* 20 NY2d 440, 454-455, *cert denied* 391 US 928; *People v Miller,* 6 NY2d 152, 156; *People v Bauer,* 32 AD2d 463, 475, *affd* 26 NY2d 915; *cf., People v Lourido,* 70 NY2d 428, 435; *People v Henning,* 271 AD2d 813). However, the better practice would have been for County Court—after disclosing the request to counsel and discussing it with them on the record—to answer the question in the negative and fashion a response reminding all jurors of their

---

2. However, defense counsel's remarks on the record at trial and on his CPL 330.30 motion made prior to sentencing do support the conclusion that counsel was made aware of the note's contents.

responsibility to act with civility and to accord each other mutual respect while deliberating with a view toward reaching an agreement (*see, e.g., People v Scott*, 213 AD2d 501, *lv denied* 85 NY2d 980; *see also*, 1 CJI[NY] 42.08, 42.60).

Finally, defendant contends that he should have received a shorter sentence because his role in this robbery was significantly less than the other defendants, Toms and Mack, who received negotiated sentences of 12½ to 25 years' and 7 to 14 years' imprisonment, respectively, upon their guilty pleas. We are not persuaded that defendant's sentence—which was less than the maximum sentence then available for this class B violent felony—is harsh or excessive in view of the violent and very serious nature of this crime. Defendant voluntarily and actively participated in this robbery while carrying a butcher knife and we find no abuse of discretion or extraordinary circumstances in this regard warranting a reduction of the sentence (*see, People v Mackey*, 136 AD2d 780, *lv denied* 71 NY2d 899).

Crew III, J. P., Carpinello, Graffeo and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.