People v Williams (2026 NY Slip Op 50329(U))

[*1]

People v Williams

2026 NY Slip Op 50329(U) [88 Misc 3d 1234(A)]

Decided on March 14, 2026

County Court, Columbia County

Howard, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on March 14, 2026
County Court, Columbia County

The People of the
State of New York

againstCarl Williams, Defendant.

IND-70018-15

Hon. Chris Liberati-ConantColumbia County District Attorney325
Columbia Street, Suite 260Hudson, New York 12534Matthew Hug, Esq.HUG LAW, PLLCPO Box 14263Albany, New York 12212Attorney for the
Defendant

Michael C. Howard, J.

Upon the application of the defendant, this Court granted a motion for a hearing to determine
if defendant's Batson challenge at his 2018 trial was erroneously denied. Defendant's
appeal was held in abeyance at his request after the Columbia County District Attorney's newly
formed conviction integrity unit disclosed to appellate counsel the prosecution's jury selection
worksheet, from the prior administration. The disclosure revealed that the prosecutor wrote
"Jamaican" in the chart box indicating the seating position for Juror 192, and then scribbled the
word out. Notably, Juror 192 was the subject of a Batson challenge at trial, which was
denied.
In reviewing the transcript of the jury selection from 2018, the trial prosecutor, Mr. Carty,
resisted even a finding that the defense had made a prima facie case for a Batson
challenge. This position was obviously untenable, Juror 192 being the only person of color in the
venire. See People v. Jones, 136
AD3d 1153 (3d Dep't 2016); People
v. Bridgeforth, 28 NY3d 567 (2016).
The trial judge ultimately found that Juror 192's marihuana leaf hat "is, in fact a valid race
neutral reason to exclude him. Frankly, it is well within the ambit of a prosecutor's discretion to
use a peremptory challenge for someone who displays something that a prosecutor finds
objectionable. It is not based on his race or nationality or his skin tone." The Judge further
determined that the hat was in the Juror 192's possession and that it depicted a marihuana leaf. "It
is, I will say for the record, without dispute that it represents a marihuana leaf. You can't possibly
envision it to be anything else. It is, appears to be a multicolor, as a I know, [*2]representing the colors of the Jamaican flag. So, even taking him at
his word, that he does not know it represents a marihuana leaf, is really not relevant." The Judge
ultimately found that the prosecutor's given reason was not a pretext for discrimination, and
allowed Juror 192 to be dismissed.
A hearing was held on September 25, 2025, at which the prosecution's jury selection
worksheets were admitted into evidence.
At the September 2025 hearing, former Assistant District Attorney Ryan Carty testified that
he had been provided the seating charts for the jurors the night before voir dire of this
particular jury panel, and that he had made notations about the jurors in the respective boxes
using the jury questionnaire. Mr. Carty testified that he had written "Jamaica" in Juror 192's
seating chart box, but also "Puerto Rico" and "United Kingdom" in other potential juror's seating
chart box. 
The defense pointed out in their post-hearing memorandum, the notations for "England" and
"United Kingdom" evident on People's Exhibit 2 appear on the upper right hand corner of the
chart box, but the notations for "Puerto Rico" and "Jamaica" evident on People's Exhibits 2 and
2a appear on the upper left hand corner of the chart box, a more prominent area, where the
notations more commonly reflected the potential juror's occupation. 
Mr. Carty testified that he crossed off the word "Jamaica" while conferring with co-counsel
"out of frustration" after the trial court's ruling on the Batson challenge. 
Mr. Carty reiterated the same race-neutral reasoning for the peremptory strike of Juror 192
that he had articulated at jury selection in 2018. Carty testified at the 440 hearing that he did not
strike Juror 192 because the man was a Black Jamaican, but because he had a hat with a
marijuana leaf on it in the colors of the Jamaican flag. According to the trial transcript, the
offending hat was not observed by the defense counsel or the Judge until after Mr. Carty
conferred with the District Attorney of Columbia County. The hat was revealed to trial counsel
and the nisi prius when Juror 192 was called in front of the Judge and questioned about
his hat.
A review of People's Exhibit 2 shows that Juror 14, who had the "Puerto Rico" notation, was
rejected for cause. The note in her chart box indicates that she "knows PC." It appears that Juror
7 was seated despite a notation indicating "friend convicted selling pot." 
After the hearing, the People and defendant provided the court with memoranda on
November 7, 2025.
The defense proposes various grounds to vacate the judgment of conviction, citing CPL
§§ 440.10(1)(b), (h) and (f). These subdivisions empower a court to vacate a
conviction on a post conviction motion provided it finds:
(b) The judgment was procured by duress, misrepresentation or fraud on the part of
the court or a prosecutor or a person acting for or in behalf of a court or prosecutor;
or(h) The judgment was obtained in violation of a right of the
defendant under the constitution of this state or of the United States;
or(f) Improper and prejudicial conduct not appearing in the record
occurred during a trial resulting in the judgment which conduct, if it had appeared in the record,
would have required a reversal of the judgment upon an appeal therefrom;In
their post-hearing memorandum, the People argue that trial counsel did not meet their burden of
showing that Mr. Carty's given race-neutral reason for the peremptory challenge was pretextual.
They further argue that the jury worksheet cross-out does not or would not affect the trial court's
determination that Mr. Carty's race-neutral reason was a pretext for invidious discrimination. The
People point out that they would have liked to offer the trial judge's testimony in support of their
argument. However, the People's request to re-open the hearing to provide the judge's testimony
was denied by this Court.
The People further argue that Mr. Carty testified frankly and honestly regarding the jury
selection process, and as an officer of the court, and an Assistant District Attorney, he is bound
by an oath to uphold the law. According to the People, it follows that Mr. Carty would not
fabricate a pretext.
Batson challenges are more properly reviewed on a direct appeal, see People v.
Williams, 181 AD2d 846, 847 (1st Dep't 1992), but in this case there was documentary
evidence dehors the record that the District Attorney's Office provided to appellate
counsel. This material — the jury selection worksheets — was appropriate to
introduce at a hearing, so that it can be considered at the appellate level. People v. Tuff, 156 AD3d 1372,
1378 (4th Dep't 2017). "On a motion to vacate, a hearing is warranted when the submissions
"show that the nonrecord facts sought to be established are material and would entitle [the
defendant] to relief." People v.
Bailey, 232 AD3d 1031, 1036 (3d Dep't 2024), leave to appeal denied, 43 NY3d
929, 254 N.E.3d 639 (2025).
A defendant's rights under Batson v. Kentucky, 476 U.S. 79 (1986) are guaranteed by
the equal protection clause of the United States Constitution. "Purposeful racial discrimination in
selection of the venire violates a defendant's right to equal protection because it denies him the
protection that a trial by jury is intended to secure. 'The very idea of a jury is a body . . .
composed of the peers or equals of the person whose rights it is selected or summoned to
determine; that is, of his neighbors, fellows, associates, persons having the same legal status in
society as that which he holds.'" Batson v. Kentucky, 476 U.S. at 86, quoting Strauder
v. West Virginia, 10 Otto 303, 308 (1880).
The right to equal protection at trial has been adopted wholeheartedly by New York State,
under the New York State Constitution Article I, Section 11, and Civil Rights Law Section 13.
Bridgeforth, 28 NY3d at 572. It appears, therefore, that the defendant here has made out a
prima facie case that the jury selection process suffered from some constitutional
infirmities, such as would be remedied by CPL 440.10(1)(h).
At a CPL 440 hearing, "the defendant has the burden of proving by a preponderance of the
evidence every fact essential to support the motion." CPL 440.30(6). As this Court is sitting as
the trial court upon defendant's motion to vacate the judgment, this Court is therefore tasked with
finding whether a Batson violation exists, by a preponderance of the evidence.
The Batson challenge consists of a three step procedure which has been described in
multiple cases, including by the Court of Appeals in 2024.
In step one, the moving party bears the burden of establishing a prima facie case of
purposeful discrimination against a cognizable group in the exercise of peremptory strikes. Once
the court finds a prima facie case of unlawful discrimination has been established, the inquiry
moves on to step two, in which the nonmoving party must provide a race-neutral reason for
excluding each panelist challenged. At step three, the [*3]burden
shifts back to the moving party to persuade the court that the reasons are merely a pretext for
intentional discrimination. In step three, the trial court makes an ultimate determination on the
issue of discriminatory intent based on all of the facts and circumstances presented, evaluating
whether the moving party's proffered reasons are merely a pretext for intentional discrimination.
People v. Wright, 42 NY3d
708, 727, 252 N.E.3d 1093 (2024) (Wilson in dissent)(internal citations and quotes omitted).
It is clear from the trial record, submitted by defense counsel, that Juror 192
not only was the only person of color on the panel, but also shared a Jamaican heritage with the
defendant. The defense attorney, in pointing out the peremptory strike of Juror 192, made a
prima facie case that the prosecution struck the juror due to his race. "Racial identity
between the defendant and the excused person might in some cases be the explanation for the
prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it
may provide one of the easier cases to establish both a prima facie case and a conclusive showing
that wrongful discrimination has occurred." Powers v. Ohio, 499 U.S. 400, 416
(1991).
The prosecution's proffered reason for the strike is much the same as for other peremptory
strikes by the Columbia County District Attorney's Office which have been challenged in
appellate courts, i.e. whimsical, arbitrary, and unrelated to the case at hand. See People v. Murray, 197 AD3d
46, 49 (2d Dep't 2021). "[A]fter Batson, the trial judge may still consider historical evidence
of the State's discriminatory peremptory strikes from past trials in the jurisdiction . . . "
Flowers v. Mississippi, 139 S. Ct. 2228, 2245 (2019). 
In People v. Cruz, 228 AD3d
1019, 1022 (2024), the prosecution offered the following for his race-neutral justification for
the perempt of a person of color: "this juror was laughing and didn't appear to be taking this
seriously" . . . and "he didn't think the juror had the premarity [sic] to be able to be on the
jury."
In People v. Morgan, 230 AD3d 865 (2024), the Columbia County District Attorney's
Office excluded two people of color because they "had only lived in Columbia County for a few
years," and one of those because she had moved buildings at her work and was ambivalent about
the change. Morgan, 230 AD3d at 873-874. In the Morgan case, Judge Powers'
dissent at the Third Department found the prosecutors misconstrued what the juror actually said
during voir dire, and that the prosecutor's race-neutral reason "was not borne out by the
record." Morgan, at 875. 
Notably, the instant case against the defendant here was prosecuted by the same Assistant
District Attorneys who eliminated all the minorities from the jury on the Morgan and
Cruz juries.
In both Cruz and in the instant case, the prosecutor became sardonic when confronted
with a Batson challenge. In Cruz, the prosecutor asked the Judge: "So I can't kick
any person of color off the jury panel?" Cruz, 228 AD3d at 1023. In this case, at trial in
2018, the same prosecutor, in answer to the argument that he made no inquiry about the (as yet
unseen by the judge and defense) marihuana hat, had the following colloquy with the Judge:
Mr. Carty: Your Honor, I didn't feel the need to further question him if I made that
observation of him. There was — Mr. K. was wearing a shirt that's a Cleveland Cavaliers
shirt. It's my understanding that someone who would do that may like the
Cavaliers.The Court: But you weren't going to use the Cleveland
Cavaliers shirt as a basis to try to support the refuting of a Batson challenge. Let's be real.
(Transcript of Jury selection Williams Trial p 421.)
By his own admission at the CPL 440 hearing, the same prosecutor became upset and
scribbled on his jury worksheet, obliterating the word "Jamaica," in response to the
Batson challenge. It can be argued that this reaction appears to be consciousness of guilt,
or, as the saying goes - "a hit dog will holler."
The race-neutral reason given for the perempt in this case, that Juror 192 possessed a hat
depicting a cannabis leaf in the colors of the Jamaican flag, is a whimsical, arbitrary reason, not
related to the issues in dispute in this case.[FN1]
The trial took place in 2018, a time when recreational cannabis was legal just across the border in
Massachusetts since 2016. Medical cannabis has been legal in New York State since 2016, and at
his budget address in January 2018, then-governor Andrew Cuomo urged the Legislature to take
up a legalization study. 
The Columbia County District Attorney's Office in past years has a history of concealing
evidence and not being forthcoming with Columbia County Court Judges. In People v. Davis, 83 Misc 3d 760,
766 (Columbia County Court 2023), Judge Nichols wrote that the People's failure to inform the
court of the status of an appeal from June 13, 2019 to September 28, 2022 "beggars the
imagination," finding that "the People withheld vital information." In People v. Thomas, 81 Misc 3d
1231(A) (Columbia County Court 2024), Judge Koweek wrote "For nearly a thousand days,
the People failed, in toto, to advise defendant that, at one point, the alleged victim of the
crimes charged against him had repeatedly denied that he engaged in any crime or abuses of her."
The Third Department dismissed a Columbia County Indictment for a sex crime, because, they
said: "we are faced with a situation where the People certified, allegedly in good faith, that "the
prosecutor has disclosed and made available all known material and information subject to
discovery" (CPL 245.50 [former (1)]), despite knowing full well that they were intentionally
withholding the CAC video. As such, we find that the People did not file the October 2020 COC
in good faith . . . " People v. Mazelie, 244 N.Y.S.3d 323, 328 (3d Dep't 2025).[FN2]

The Columbia County District Attorney's Office also has a history of overreach, such as was
observed by Judge Zwack in Hudson
Police Local 3979 v. Bower, 73 Misc 3d 1063, 1069 (Sup. Ct. Columbia County 2021),
when he wrote: "Here, the DA is impermissibly making himself and his office the repository of
every bad act, founded or unfounded, of every law enforcement officer in the County of
Columbia, rather than putting into place the mechanisms to ensure the flow of current
discoverable material specific to a particular case and to only those police officers specific to the
case."
"[W]hen a Batson objection has been made, defendant is entitled to the benefit of the
proposition that peremptory challenges permit those inclined to discriminate to do so." People
v. Bolling, 79 NY2d 317, 324, 591 N.E.2d 1136 (1992).
The Columbia County District Attorney's Office, in its past iteration, has earned closer
scrutiny in its peremptory challenges by its past disregard for the law. It cannot hide information
from the Court and overreach its power, and then ask that Court to assume good faith and
transparency in its peremptory challenges of Black and Hispanic venire members. "The jury acts
as a vital check against the wrongful exercise of power by the State and its prosecutors. The
intrusion of racial discrimination into the jury selection process damages both the fact and the
perception of this guarantee. Jury selection is the primary means by which a court may enforce a
defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or
predisposition about the defendant's culpability." Powers v. Ohio, 499 U.S. 400,
411—12 (1991). (Internal citations omitted). It appears the prosecution of this matter
intentionally ignores this fundamental protection.
This Court is hard pressed to ascribe forthrightness and good faith to the prosecutor in Mr.
Williams' trial, given the pattern of misconduct before this tribunal, and the clear pattern of
eliminating people of color from previous juries. Therefore, this Court finds that the "marijuana"
leaf hat is a red herring, a pretext for unconstitutional racial discrimination. "[I]f race (or any
other invidious classification) forms any part of a reason for use of a peremptory strike,
Batson requires that the strike be rejected." People v. Wright, 42 NY3d 708, 727—28 (2024) (Wilson in
dissent).
The defendant's motion is Granted and the matter of People v. Carl Williams,
Indictment No. 70018-15 is restored to the trial calendar.
This is the Decision and Order of the Court.
Dated: March 14, 2026Hudson, New YorkENTER:Michael C. Howard,
J.C.C.

Footnotes

Footnote 1:In fact, the prohibition of
cannabis has deep roots in racism. Richard J. Bonnie & Charles H. II Whitebread, The
Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American
Marijuana Prohibition, 56 Va. L. Rev. 971 (October 1970). The New York State Legislature
acknowledged this in 2019 with the passage of L 2019 Ch 131, which further decriminalized
possession of cannabis and provided for expungement of certain cannabis offenses. 2019 Senate
Bill S6579A memorandum in support stated for its justification for the relaxing of the laws that "
. . . in New York, possessing small amounts of marijuana is largely decriminalized for people
who are white, and vastly more likely to be criminalized for people who are black or Latino." 
https://www.nysenate.gov/legisla
tion/bills/2019/S6579 (Last accessed March 3, 2025).

Footnote 2:The Columbia County District
Attorney's Office flouting of discovery laws caught the attention of the Albany Times Union.
"Editorial: Justice Not Served in Columbia County," Times Union, Nov. 6, 2025, 
https://www.timesunion.com/opinion/article/editorial-justice-not-served-columb
ia-county-21137973.php
(last accessed 3/10/26).