THIRD DEPARTMENT, JANUARY, 2005

(January 6, 2005)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHOLAS E. PRYOR, Also Known as PEANUT, Appellant. [787 NYS2d 503]—

Spain, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 4, 1998, upon a verdict convicting defendant of the crime of murder in the second degree.

Following a jury trial, defendant was convicted of intentional second degree murder for the November 6, 1997 stabbing and beating death of Jenna Honis at her apartment on Madison Avenue in the City of Albany. In defendant's statement to police, which was introduced at trial, he admitted having been at the victim's apartment at the time of the murder but claimed that he blacked out and had no memory of what occurred, and fled out a window when police arrived in response to the victim's

emergency 911 call (*see Grieshaber v City of Albany,* 279 AD2d 232 [2001], *lv denied* 96 NY2d 719 [2001]). Defendant, who knew the victim and previously resided in the same building, was apprehended at his nearby apartment leaving with a packed suitcase, with fresh wounds to his hands, and blood later determined to have come from the victim was found on his clothing. Defendant was sentenced to a prison term of 25 years to life, and now appeals raising a *Batson* claim and challenging County Court's ruling granting the People's application to take a blood sample from his body. We affirm.

Initially, we find no error in County Court's ruling that defense counsel failed to make out a prima facie case of purposeful discrimination as required to assert an equal protection violation premised upon discriminatory use of peremptories under *Batson v Kentucky* (476 US 79, 94-98 [1986]) (*see People v Smocum,* 99 NY2d 418, 421 [2003]). While defendant satisfied the requirement that he is a member of a cognizable racial group, an African American, and that the People removed members of that group from the venire, the defense failed to even allege "that the facts and circumstances of the voir dire raise an inference that [the People] excused one or more jurors for an impermissible reason" (*People v Smocum, supra* at 421; *see People v Childress,* 81 NY2d 263, 266-267 [1993]; *People v Skervin,* 13 AD3d 661 [2004]). The record of jury selection reflects that the first panel contained one African American, who was selected to serve and designated as the foreperson. The second panel contained at least three, possibly four, African Americans, and the People exercised peremptory challenges as to three of them. Defense counsel made a conclusory *Batson* objection, requesting a race-neutral reason as to two of the jurors. Although given fair opportunity to articulate some basis in the facts or circumstances of the voir dire from which an inference of discriminatory intent could be drawn, counsel's objection was perfunctory in that it was "premised on the purported absence of any legitimate reason to challenge the juror[s], as opposed to actual facts or circumstances, and [was] thus insufficient to show a prima facie case of discrimination" (*People v Henderson,* 305 AD2d 940, 941 [2003], *lv denied* 100 NY2d 582 [2003]; *see People v Childress, supra* at 267-268; *People v Beverly,* 6 AD3d 874, 875 [2004], *lv denied* 3 NY3d 637 [2004]; *People v Colon,* 307 AD2d 378, 380 [2003], *lv denied* 100 NY2d 619 [2003]; *People v King,* 277 AD2d 708, 708-709 [2000], *lv denied* 96 NY2d 802 [2001]; *see also People v Jenkins,* 84 NY2d 1001 [1994]).

Defendant's bare assertion, relying on the number of excluded

jurors, without more, did not satisfy the "obligation to articulate a sound factual basis for his claim during the *Batson* colloquy" (*People v Childress, supra* at 268) and was insufficient to establish a prima facie case (*see People v Jenkins, supra* at 1003; *People v Henderson, supra* at 940-941). Because defendant failed to raise an inference of discrimination under the first step of the *Batson* analysis, the burden never shifted to the People to offer race-neutral explanations for the challenges (*see People v Jenkins, supra* at 1003; *People v Henderson, supra* at 941).

We also find that County Court properly granted the People's application to take a blood sample from defendant for scientific analysis, pursuant to CPL 240.40 (2) (b) (v). Under the guidelines established by the Court of Appeals, a court order to obtain a blood sample from a suspect may issue where, as here, the People establish "(1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication' that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable" (*Matter of Abe A.,* 56 NY2d 288, 291 [1982]). As we previously recounted in dismissing defendant's CPLR article 78 proceeding seeking to prohibit the taking of his blood (*Matter of Pryor v Greenberg,* 247 AD2d 711 [1998]), the application was made after defendant had been indicted for this crime, thus providing statutory authority and probable cause (*id.* at 712; *see Matter of Abe A., supra*; *Matter of Hampshire v Scarano,* 270 AD2d 794, 795 [2000]; *cf. People v Afrika,* 9 AD3d 876 [2004], *amended* 11 AD3d 1046 [2004]; *Matter of David M. v Dwyer,* 107 AD2d 884 [1985]). Further, traces of blood had been recovered at the crime scene, police had observed apparently recently sustained wounds on defendant which could have left trace amounts of blood at the scene, and defendant had provided police with an inculpatory statement placing himself in the apartment at the time of the homicide. We find that the substantial, probative evidence before County Court on this application provided a "clear indication" that the blood sample would supply relevant material evidence (*Matter of Abe A., supra* at 291, 297) "of importance" (*id.* at 297). In addition, County Court sufficiently weighed the seriousness of this crime and the potential importance of the evidence to this investigation and the unavailability of less intrusive means, and we discern no error in its conclusion that these factors and the substantial factual predicates supporting the application overrode defendant's right to be free of bodily intrusion (*see id.* at 291; *Matter of Chaplin v McGrath,* 215 AD2d 842, 843 [1995]). Moreover, defendant's blood was not discovered at the crime scene, seriously undermining any claim of prejudice in this order, and any conceivable error was harmless beyond a reasonable doubt (*see People v Crimmins,* 36 NY2d 230, 237 [1975]).

Mercure, J.P., Crew III, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.