# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1014

KA 13-01865

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, WHALEN, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

GERALD E. HOGUE, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (TIMOTHY P. MURPHY OF COUNSEL), FOR DEFENDANT-APPELLANT.

GERALD E. HOGUE, DEFENDANT-APPELLANT PRO SE.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (MATTHEW B. POWERS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Erie County Court (Michael F. Pietruszka, J.), rendered August 19, 2013. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in denying his application pursuant to *Batson v Kentucky* (476 US 79) inasmuch as the prosecutor's explanations for striking the prospective juror were vague and nonspecific, thereby compelling an inference of discriminatory motive. We reject that contention. After the court determined that defendant had established a prima facie case of discrimination, the prosecutor explained that he was striking the juror because, throughout the proceedings, the prospective juror had "appeared completely bored and disinterested." Moreover, the prospective juror was "resting her head on her hand" and admitted that she was just "trying to stay awake." Inasmuch as the prospective juror was the first juror seated on the first panel, the prosecutor questioned whether she could be an interested and conscientious juror throughout the entire trial. Affording considerable deference to the court's determination that the prosecutor's specific and race-neutral reasons were nonpretextual (*see People v Harris*, 50 AD3d 1608, 1608, *lv denied* 10 NY3d 959; *see generally People v Hernandez*, 75 NY2d 350, 356, *affd* 500 US 352), we conclude that the court properly denied defendant's *Batson* challenge (*see People v Artis*, 262 AD2d 215, 215, *affd* 94 NY2d 507, *rearg denied* 95 NY2d 849; *People v Alston*, 307 AD2d

1046, 1046, *lv denied* 1 NY3d 539).

Defendant further contends that he was denied a fair trial by the admission of evidence of an uncharged crime, i.e., physically striking a 15-year-old girl during a melee that occurred before he was arrested for the instant offense (*see generally People v Ventimiglia*, 52 NY2d 350), as well as the lack of any curative instructions related to that evidence. Although defendant concedes that his contention is not preserved for our review because "he did not object to the testimony in question" (*People v Paul*, 78 AD3d 1684, 1684, *lv denied* 16 NY3d 834), he further contends that he was denied effective assistance of counsel because defense counsel failed to object to such evidence, failed to request a *Ventimiglia* hearing, and failed to request curative instructions following the admission of the *Ventimiglia* evidence. In our view, the evidence was admissible because it " 'provided background information explaining' " why the police officers were called to the scene (*People v Coldiron*, 87 AD3d 1383, 1383, *lv denied* 19 NY3d 959), and "was needed to complete the narrative of the events" that prompted police involvement (*People v Miller*, 286 AD2d 981, 982, *lv denied* 97 NY2d 657). Even assuming, arguendo, that the court "erred in admitting evidence of [an uncharged crime] without a prior ruling that [such] evidence was admissible . . . and failed to give appropriate limiting instructions to the jury," we conclude that the errors are harmless in light of the overwhelming proof of defendant's guilt (*People v Smith* [appeal No. 1], 266 AD2d 889, 889, *lv denied* 94 NY2d 907; *see People v Watkins*, 229 AD2d 957, 957, *lv denied* 89 NY2d 931). Here, as in *Watkins*, "[t]here is no significant probability that defendant would have been acquitted but for [those errors]" (229 AD2d at 957; *see generally People v Crimmins*, 36 NY2d 230, 241-242).

Contrary to defendant's further contention related to the alleged ineffective assistance of counsel, we conclude that "any error on trial counsel's part in not [objecting to and in not] requesting a limiting instruction regarding the evidence of [the] past uncharged crime[] does not rise to the level of ineffective assistance of counsel when that error is viewed in light of trial counsel's 'entire representation of defendant' " (*People v Leonard*, 129 AD3d 1592, 1594, quoting *People v Oathout*, 21 NY3d 127, 132). Moreover, defendant has "failed 'to demonstrate the absence of strategic or other legitimate explanations' for the failure of defense counsel to pursue a . . . *Ventimiglia* hearing, or to object to the admission of [such evidence] at trial" (*People v Webster*, 56 AD3d 1242, 1242-1243, *lv denied* 11 NY3d 931, quoting *People v Rivera*, 71 NY2d 705, 709).

Contrary to his contention, defendant was not denied his right to counsel when his request to substitute assigned counsel was denied. "The court made the requisite minimal inquiry into defendant's reasons for requesting new counsel," but defendant failed to establish good cause for the substitution of counsel (*People v Goossens*, 92 AD3d 1281, 1281-1282, *lv denied* 19 NY3d 960 [internal quotation marks omitted]). "We note that the court had previously granted defendant's request to substitute counsel, and that [t]he right of an indigent

criminal defendant to the services of a court-appointed lawyer does
not encompass a right to appointment of successive lawyers at
defendant's option" (*id*. at 1282 [internal quotation marks omitted];
*see generally People v Sides*, 75 NY2d 822, 824).

Defendant contends that the court erred in granting the People's
motion directing him to submit a buccal swab.  We reject that
contention.  A court may issue an order to obtain corporeal evidence,
such as blood or saliva, from a suspect where the People establish:
"(1) probable cause to believe the suspect has committed the crime,
(2) a 'clear indication' that relevant material evidence will be
found, and (3) the method used to secure it is safe and reliable"
(*Matter of Abe A.*, 56 NY2d 288, 291; *see People v Smith*, 95 AD3d 21,
24).  In opposition to the People's motion, defendant conceded that
the People had established the third factor.  Thus, to the extent that
defendant contends on appeal that the People failed to meet that
factor, that contention has been waived (*see e.g. People v Jones*, 110
AD3d 1484, 1485, *lv denied* 22 NY3d 1157; *People v Laracuente*, 21 AD3d
1389, 1390, *lv denied* 6 NY3d 777).  With respect to the remaining two
factors, we conclude that the court properly granted the People's
motion.  Where, as here, the request was made after the defendant has
been indicted, "the indictment provided the court with the requisite
clear indication that probative evidence could be discovered from
[the] buccal swab" (*People v Small*, 79 AD3d 1807, 1809, *lv denied* 16
NY3d 837 [internal quotation marks omitted]), as well as the requisite
"statutory authority and probable cause" (*People v Pryor*, 14 AD3d 723,
725, *lv denied* 6 NY3d 779).

Finally, defendant contends in his pro se supplemental brief that
he was subjected to an illegal de facto arrest and, as a result, any
physical and identification evidence obtained as a result of that
arrest should have been suppressed.  That contention lacks merit.  As
a preliminary matter, to the extent that defendant sought suppression
of evidence seized from a codefendant, that contention is not
preserved for our review inasmuch as defendant failed to assert his
claims of standing at the suppression hearing (*see People v Carter*, 86
NY2d 721, 722-723, *rearg denied* 86 NY2d 839).  In any event, we
conclude that defendant "lacks standing to challenge the search of
[the codefendant], since [defendant] was not the person against whom
the search was directed[,] and he cannot complain that his
constitutional privacy protections have been infringed as a result of
[the search of the codefendant]" (*People v Pursley*, 158 AD2d 255, 256;
*see People v Douglas*, 23 AD3d 1151, 1152, *lv denied* 6 NY3d 812; *People
v Dawson*, 269 AD2d 817, 818, *lv denied* 95 NY2d 833).

Contrary to defendant's remaining contentions concerning the
suppression ruling, we conclude that police officers had reasonable
suspicion to stop and detain defendant after an "identified citizen-
informant" informed the officers that defendant, who was still in the
vicinity, had just assaulted a girl and was in possession of a weapon
(*People v Brown*, 288 AD2d 152, 152, *lv denied* 97 NY2d 727; *see People
v Whorley*, 125 AD3d 1484, 1484, *lv denied* 25 NY3d 1173).  Once
detained, defendant abandoned a bag containing bullets, which was then
seized by the officers.  Inasmuch as defendant's abandonment of the

bag was not caused by any illegal police conduct, the court properly refused to suppress the evidence contained therein (*see People v Sierra*, 83 NY2d 928, 930; *People v McKinley*, 101 AD3d 1747, 1749, *lv denied* 21 NY3d 1017).

Entered:  November 13, 2015                    Frances E. Cafarell
                                               Clerk of the Court