People v Morales (2024 NY Slip Op 24307)

[*1]

People v Morales

2024 NY Slip Op 24307

Decided on December 4, 2024

Supreme Court, Kings County

Daniels-DePeyster, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 4, 2024
Supreme Court, Kings County

The People of the State of New York

against
Jefferson Morales, Defendant.

Indictment No. 7377-24

Cassandra Charles, Esq. of the Legal Aid Society for the defendant.
ADA Maria Miranda for Eric Gonzalez, Kings County District Attorney's Office.

Claudia Daniels-DePeyster, J.

The People seek an order pursuant to Matter of Abe A., 56 NY2d 288 (1982) and Criminal Procedure Law (hereinafter "CPL") § 245.40(1)(e) authorizing the taking of a buccal/saliva swab from the defendant. They seek to compare this swab to a DNA profile created for a firearm allegedly recovered from the defendant. The defendant opposes the People's motion and cross-moves for a protective order limiting the use of his DNA profile.
For the reasons set forth below, the People's motion to compel the taking of an oral swab sample is held in abeyance.
 I. Background and Procedural History
The defendant is charged with Criminal Possession of a Weapon in the Second Degree (PL § 265.03) and related offenses. The People allege that on June 2, 2024, at approximately 8:40 PM, the defendant was driving a motorized scooter without wearing any headgear. Police Officer Ricardo Perez attempted to conduct a traffic stop. The defendant stopped the motorized scooter. As the officer exited his vehicle the defendant drove into Officer Perez and then attempted to drive away from the location. The officer followed the defendant and after a short pursuit, was able to apprehend him. After Officer Perez apprehended the defendant, he removed a fanny pack from defendant's chest and handed the fanny pack to Officer Justin Roman. Officer Roman felt a weight and an L-shaped object inside the fanny pack. He recovered a loaded Taurus 9MM pistol (see People's Motion at 8-9).
The New York City Police Department Evidence Collection Team (hereinafter "ECT") swabbed the firearm. These swabs were vouchered and sent to the Office of the Chief Medical Examiner of the City of New York (hereinafter "OCME"), Department of Forensic Biology, for testing and analysis related to the presence of DNA material.
An OCME criminalist analyzed the firearm swabs and issued a report on July 11, 2024, Lab No. FB24-03590 (see People's Exhibit 1). The report indicates that DNA swab samples were taken from the "trigger and trigger guard," "front and back straps and side grips," and "slide grip grooves, slide release, and safety" (id.). The report went on to say that "[t]he DNA profiles of the individual contributors to the mixture(s) were not determined; however, the results are suitable [*2]for comparison" (id.).
Consequently, the People have filed a motion to compel the defendant to provide an oral sample for DNA analysis to conclusively include or exclude the defendant as a source of the DNA found on the firearm.

II. Motion to Compel a Buccal Swab
Pursuant to CPL § 245.40(1)(e), a court may require a defendant to provide non-testimonial evidence, including "samples of the defendant's blood, hair, and other materials of the defendant's body that involves no unreasonable intrusion thereof." To obtain such an order, the People must establish "(1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication' that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable" (Matter of Abe A., 56 NY2d 288, 291 [1982]; CPL § 245.40[1][e]).
A. Probable Cause
For the People to establish probable cause, they must provide sufficient information to support a "reasonable belief" that the defendant committed the crime; probable cause does not require proof beyond a reasonable doubt (People v. Bigelow, 66 NY2d 417, 423 [1985]). In this case, the People have already obtained an indictment creating a presumption of probable cause (see Colon v. City of New York, 60 NY2d 78 [1983]); see People v. Pryor, 14 AD3d 723, 725 [3d Dept. 2005] (finding that the People's application to take a blood sample from the defendant was made after the defendant had been indicted, "thus providing statutory authority and probable cause")). Moreover, here, the firearm was recovered from a fanny pack the defendant was wearing on his person.
B. Clear Indication that Relevant Material is Likely to be Found
The defendant argues that the People have failed to establish a "clear indication that relevant material evidence" can be gathered by obtaining a buccal swab from Mr. Morales (see Defense Motion at § I). Specifically, they argue that "the prosecution has failed to establish that the intrusion will supply substantial probative evidence, as the lab testing the evidence in this case is under investigation for contamination and integrity issues" (Defense Motion at 9).
On September 6, 2024, the OCME wrote to inform the Office of the Mayor of a "significant event" (hereinafter "the September 6 letter") concerning DNA contamination incidents within the Department of Forensic Biology at the Office of the Chief Medical Examiner (see Defense Exhibit A — Sept. 6 Letter from the OCME). The September 6 letter indicates that these incidents involved improper handling of evidence by three different criminalists, leading to cross-contamination of DNA samples in eight cases between June and August 2024. The OCME initiated an internal investigation and took corrective actions, including suspending the criminalists involved, requiring retraining, revising laboratory procedures, conducting deep cleaning, and pausing certain lab operations temporarily. The OCME went on to say that a retrospective review is underway to identify any additional cases affected by contamination during the period from May 1, 2024, to August 9, 2024. DNA profiles affected by the contamination are being removed from the national database (CODIS), though no wrongful matches or impacts on criminal cases have been reported. The OCME Laboratory Report prepared in connection with this case was generated on July 11, 2024, which falls within the timeframe of this contamination incident.
On October 7, 2024, the OCME issued a confidential memorandum (hereinafter "the October 7 memo") to members of the local public defender organizations, the district attorney's offices, the New York City Law Department, and the New York City Courts, among others (see [*3]Defense Exhibit B — October 7 Memorandum from the OCME). In the October 7 memo, the OCME provided an update on its ongoing investigation into the DNA contamination incidents and indicated that the contamination affected 22 cases and involved nine criminalists. The October 7 memo also notified the recipients that the OCME had reviewed over 12,000 samples and nearly 4,000 cases as part of its investigation but found no intentional wrongdoing by the criminalists.
On October 29, 2024, the OCME issued a letter (hereinafter "the October 29 letter") to members of the New York City Courts, the District Attorney's Offices of the five boroughs, and the United States Attorney's Offices addressing defense letters regarding the recent contamination events (see Defense Exhibit C — October 29 Letter from the OCME). Apparently, defense attorneys and organizations have stated that to do a thorough investigation, the Laboratory should be using a software tool that performs mixture-to-mixture comparisons and that "Although the Laboratory does have the STRmix software that contains the mixture-to-mixture comparison module, the Laboratory has not validated this component of the software. It would take the Laboratory several months to perform an internal validation, implement a protocol, and train staff on this use of this module" (id. at 2). The October 29 letter assures the recipients that the investigation into the contamination event is still ongoing and that over 12,000 samples and 3,500 cases have already been reviewed. Through their investigation, the OCME identified contamination in less than 0.5% of the cases and no erroneous DNA links leading to wrongful arrests or convictions.
The People were directed by this Court to file a reply and address the contamination issues raised by the defense. Their reply was a one-page letter that stated in pertinent part:
After reviewing the forensic biology file associated with the above referenced case, we are notifying you that as to FB24-03590, Evelin Ortiz-Flores ran the extraction and quantitation, pages 13 and 28 of the PDF. Ms. Ortiz-Flores was not the examining or interpreting analyst, and her lab work did not affect the results in this case (People's Reply).
The Court finds the People's response insufficient. Their reply offers no evidence of any steps taken beyond identifying the analyst assigned to this case, which is inadequate. Moreover, the People have failed to provide any documentation to substantiate their conclusory assertion that the analyst's "lab work did not affect the results in this case." As the defendant points out, a Root Cause Analysis (hereinafter "RCA") has not been completed. The OCME website defines RCA as:
A tool used to determine the cause of deviations from procedure, practice, and/or expected results. The goal of carrying out an RCA is to learn what happened, to identify the contributing factors that lead to the issue and to identify ways in which the system may be improved upon to prevent recurrence. RCA utilizes the experience and expertise of those performing the analysis, and uses common sense techniques which produce a documented, quantified and systematic approach to identifying, understanding and resolving underlying causes (Root Cause Analysis Guidelines, https://www.nyc.gov/site/ocme/about/root-cause-analysis-guidelines.page [last visited Dec. 4, 2004]).
The OCME has not confirmed whether the contamination affected Mr. Morales's case. As a result, the prosecution cannot establish the reliability—and thus the relevance—of the testing and its results. Until the OCME's investigation and review are fully completed, all testing [*4]conducted by the laboratory remains potentially impacted, raising concerns about the reliability of its DNA results. Consequently, any recent analyses from the OCME must be deemed potentially compromised until the investigation is finalized and the findings are reported.
Therefore, the motion to compel is held in abeyance pending confirmation from the OCME that Mr. Morales's case was not impacted by the contamination event.
The foregoing constitutes the Decision and Order of the Court.
Dated: December 4, 2024
Kings County, New York
Hon. Claudia Daniels-DePeyster, A.J.S.C